JUDGE SWEET

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIMOTHY GUSLER,

              Plaintiff,

      v.

MATTHEW FISCHER, SALVATORE
GUERRERI, PETER J. LISTRO ASSOCIATES,
LTD., UNISAR, INC., AVITA CORPORATION,
TARGET CORPORATION, TOYS "R" US,
INC., AMAZON.COM, INC., WAL-MART
STORES, INC. and CHELSEA & SCOTT, LTD.
d/b/a ONESTEP AHEAD,

              Defendants.

Case No.      9535

**COMPLAINT**

JURY TRIAL DEMANDED



OCT 25 2007
U.S.D.C. S.D. N.Y.
CASHIERS

For his complaint against defendants Matthew Fischer, Salvatore Guerreri, Peter

J. Listro Associates, Inc. ("Listro"), Unisar, Inc. ("Unisar"), Avita Corporation ("Avita"),

Target Corporation ("Target"), Toys "R" Us, Inc. ("Toys R Us"), Amazon.com, Inc,

("Amazon") and Chelsea & Scott, Ltd. d/b/a OneStep Ahead ("OneStep Ahead"), and

Wal-Mart Stores, Inc. ("Wal-Mart"), plaintiff Timothy Gusler alleges as follows:

**PARTIES**

1.      Plaintiff Timothy Gusler is a natural person residing in New Jersey.

2.      Upon information and belief, defendant Matthew Fischer is a natural

person with a principal place of business at 44 East 32nd Street, NY, NY.

3.      Upon information and belief, defendant Salvatore Guerreri is a natural

person with a principal place of business at 251 W. 30th Street, Suite 3 FW, New York,

New York.

4.      Upon information and belief, Defendant Listro is a New York corporation with a principal place of business at 15 W. 36th Street, New York, New York.

5.      Upon information and belief, defendant Unisar is a New York corporation with a principal place of business at 15 W. 36th Street, New York, New York.

6.      Upon information and belief, defendant Wal-Mart is a Delaware corporation with a principal place of business at 105 S. Main Street, Bentonville, Arkansas.

7.      Upon information and belief, defendant Avita is a Taiwan corporation with a principal place of business at 9F No. 78, Sec. 1, Kwang-Fu Road, San-Chung, Taipei County.

8.      Upon information and belief, defendant Target is a Minnesota corporation with a principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota 55403.

9.      Upon information and belief, defendant Toys R Us is a Delaware corporation with its principal place of business at One Geoffrey Way, Wayne, New Jersey.   Upon information and belief, Babies R Us is a division of Toys R Us.

10.     Upon information and belief, defendant Amazon is a Delaware corporation with a principal place of business at 1200 12th Avenue South, Suite 1200, Seattle, Washington.

11.     Upon information and belief, defendant One Step Ahead is an Illinois corporation with a principal place of business at 75 Albrecht Drive, Lake Bluff, Illinois.

## JURISDICTION AND VENUE

12.     This Court has original subject matter jurisdiction over plaintiff's First, Second and Third causes of action pursuant to 28 U.S.C. § 1338(a).

13.     This Court has supplemental subject matter jurisdiction over plaintiff's Fourth, Fifth and Sixth Causes of Action pursuant to 18 U.S.C. § 1367 because those claims are so related to the claims over which the Court has original jurisdiction that they form part of the same case.

14.     This Court has personal jurisdiction over each of the foreign defendants pursuant to New York Civil Practice Law and Rules § 302(a) because each of them transacts business within the State of New York.

15.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because a substantial part of the events giving rise to plaintiff's claims occurred in this district and because certain defendants have principal places of business in this district.

## FACTS COMMON TO ALL CAUSES OF ACTION

16.     In 1997, Mr. Gusler designed an electric vacuum device to allow an adult to extract fluid from the nose and sinuses of an infant who had a cold or other respiratory ailment. From the time of the initial concept, Mr. Gusler made and revised drawings of the design.

17.     On May 8, 2002, Mr. Gusler filed a patent application seeking to obtain protection for his new device.

18.     Subsequent to his filing of the patent application, Mr. Gusler made revisions to the drawings. In the revised drawings, Mr. Gusler slightly changed the design and look of the device, including but not limited to, the shape of the tip, the visibility of the tubes and the location of a sound generator. The drawings have been registered with the United States Copyright Office as United States Copyright

Registraion No. VA-1-421-407. A copy of the registration certificate is attached hereto as Exhibit A. In the drawings, Mr. Gusler called his product "Nazelclear"

19.     Upon information and belief, defendant Matthew Fischer is in the business of developing concepts, designs and prototypes into marketable products. In summer of 2002, Mr. Gusler and a business colleague, Ed Mass, met with Mr. Fischer to show Mr. Fischer his design drawings and an early prototype in order to discuss whether or not Mr. Fischer might be able to help him bring his product design to market.

20.     Prior to showing his drawings to Mr. Fischer, Mr. Gusler requested that Mr. Fischer sign a non-disclosure agreement ("NDA"). Mr. Fischer complied with Mr. Gusler's request and executed the NDA. A copy of the executed NDA is attached hereto as Exhibit B.

21.     The NDA provides, in pertinent part, that "Owner [Mr. Gusler] wishes to disclose to Second Party [Mr. Fischer], and the Second Party wishes to receive from the Owner, the Confidential Information, as defined below, for the purposes of evaluation to determine applicability of Owner's Inventions."

22.     The NDA also provides that "neither Second Party nor its affiliates will use any Confidential Information for any purpose other than for evaluating Second Party's technical and business interest in obtaining a license or license from owner in accordance with the terms set forth in this agreement."

23.     In addition, the NDA provides that "neither the Second Party nor its affiliates will, without prior written consent of the Owner, disclose, utilize, exploit or distribute the Confidential Information or cause Confidential Information to be exploited

to any third party .... Any individual to be exposed to the Confidential Information must sign this "'NON-DISCLOSURE AGREEMENT.'"

24.    At the meeting, Mr. Gusler showed his initial designs and prototype to Mr. Fischer. Mr. Fischer expressed interest in the product and explained that he would be able to assist Mr. Gusler by building a prototype, securing the manufacturing and distributing the product. They also discussed and outlined the basic financial terms of their relationship. Mr. Fischer made and retained copies of the drawings shown to him at the meeting.

25.    At the end of their meeting, Mr. Fischer told Mr. Gusler to go to defendant Salvatore Guerreri to discuss the building of a prototype. Mr. Fischer described Mr. Guerreri as an associate and affiliate. Mr. Fischer described Mr. Guerreri as an associate and affiliate and told Mr. Gusler that Mr. Guerreri worked with Mr. Fischer and would advise him with regard to building a prototype.

26.    Based on Mr. Fischer's statements, Mr. Gusler believed that Mr. Guerreri was an affiliate of Mr. Fisher's and would be bound by the terms of the NDA. Consequently, Mr. Gusler left Mr. Fischer's office and went directly to Mr. Guerreri's office a few blocks away.

27.    At the meeting, Mr. Guerreri also expressed his enthusiasm for the commercial potential of the product. He explained to Mr. Gusler that he would be able assist Mr. Gusler by developing a prototype for his product. He explained that he and Mr. Fischer had contacts in China and would be able to help in arranging for the manufacture of the product later on in the process. At the end of the meeting, Mr.

Guerreri told Mr. Gusler that he would discuss the product with Mr. Fischer and that Mr. Fischer would get back to Mr. Gusler.

28.    Throughout the remainder of 2002 and 2003, Mr. Gusler repeatedly called Mr. Fischer to inquire about the progress of efforts in the first step of building a prototype and ultimately a commercial product from Mr. Gusler's designs, drawings and original prototype. While Mr. Fischer assured Mr. Gusler that work was still in progress, Mr. Fischer either did not respond to Mr. Gusler's inquiries as to a specific date of producing the prototype or provided vague excuses to justify the continued delay in progress toward a commercial product. Throughout these discussions, Mr. Fischer never requested permission to copy or distribute copies of the drawings.

29.    At the same time, Mr. Gusler repeatedly asked Mr. Fischer to engage in negotiations to finalize a contract. Mr. Fischer continued to stall and refused to enter into meaningful negotiations.

30.    On or about October 2003, Mr. Fischer met with Mr. Gusler and explained that the process of building a prototype had been interrupted and would have to be restarted. Mr. Fischer explained that he was having "internal" problems with Mr. Guerreri.

31.    On or about November 19, 2004, a prototype was sent to Mr. Gusler for his review. Additional work on another prototype was discussed. By this time, Mr. Gusler had decided to use the original name for his product, "Nasal Clear," and informed Mr. Fischer of that name.

32.    From Fall 2004 through Fall 2006, Mr. Gusler repeatedly contacted Mr. Fischer to discuss progress on the prototype and the overall project and Mr. Fischer

continued to assure Mr. Gusler that progress was being made, but would not commit to any projected time schedule. Throughout that period, Mr. Gusler also continuously renewed his request to execute a contract with Mr. Fischer governing the terms of the commercialization of Mr. Gusler's drawings, designs and prototypes. Mr. Fischer continued to stall on the contract as well.

33.    As before, Mr. Fischer never requested permission to copy the drawings or to distribute or show the drawings to third parties.

34.    In Winter 2006, Mr. Gusler became aware that a product was being marketed by defendants Unisar and Listro under the name "Nasal Clear." The NasalClear product is substantially similar to and, upon information and belief, was copied from, Mr. Gusler's Copyrighted Drawing.

35.    Mr. Gusler further became aware that the NasalClear product was manufactured by defendant Avita and was being offered for sale by defendants Target, Toys R Us, Amazon, Wal-Mart and OneStep Ahead, as well as by a number of on-line discount retailers.

36.    Mr. Gusler met with Mr. Fischer in January 2007 to ask him about the provenance of the infringing NasalClear product. Mr. Fischer acknowledged that the product was the same as the device shown in the Copyrighted Drawing and stated that he knew who had disclosed the drawing to third parties. But before Mr. Fischer informed Mr. Gusler who had breached the NDA, Mr. Fischer then left the room to discuss the matter with a colleague. Mr. Fischer did not provide Mr. Gusler with any additional information.

## FIRST CAUSE OF ACTION

### (Copyright Infringement as to Defendants Fischer and Guerreri)

37.     Plaintiff repeats the allegations in paragraphs 1 through 36 as if fully set forth herein.

38.     Mr. Gusler presented the Copyrighted Drawing to defendants Fischer and Guerreri for their exclusive use in evaluating Mr. Gusler's designs.  Upon information and belief, Defendants Fischer and Guerreri copied, published and otherwise disseminated the Copyrighted Drawings to third parties without the consent of Mr. Gusler.

39.     Defendants Fischer and Guerreri thereby infringed Mr. Gusler's copyright in the Copyrighted Drawing in violation of the Copyright Act, 17 U.S.C. §§ 501, 504.

40.     Due to defendants' infringement, Mr. Gusler has suffered damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### (Copyright Infringement as to Defendants Listro, Unisar and Avita)

41.     Plaintiff repeats the allegations in paragraphs 1 through 40 as if fully set forth herein.

42.     The NasalClear product is substantially similar to the Copyrighted Drawing.

43.     Upon information and belief, defendants Listro, Unisar and/or Avita copied the Copyrighted Drawing into the NasalClear product.

44.     Defendants Listro, Unisar and Avita thereby infringed Mr. Gusler's copyright in the Copyrighted Drawing in violation of the Copyright Act, 17 U.S.C. §§ 501, 504.

45.     Due to defendants' infringement, Mr. Gusler has suffered damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

**(Copyright Infringement as to Defendants Listro, Unisar, Avita, Target, Toys R Us, Amazon and OneStep Ahead)**

46.     Plaintiff repeats the allegations in paragraphs 1 through 45 as if fully set forth herein.

47.     Defendants Listro, Unisar, Avita, Target, Toys R Us, Amazon, Wal-Mart and OneStep Ahead have distributed and sold the NasalClear product and profited from such distribution and sale.

48.     Defendants Listro, Unisar, Avita, Target, Toys R Us, Amazon, Wal-Mart and OneStep Ahead have thereby infringed Mr. Gusler's copyright in the Copyrighted Drawing in violation of the Copyright Act, 17 U.S.C. §§ 501, 504.

49.     Due to defendants' infringement, Mr. Gusler has suffered damages in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

**(Breach of Contract as to Matthew Fischer)**

50.     Plaintiff repeats the allegations in paragraphs 1 through 49 as if fully set forth herein.

51.     Matthew Fischer executed the NDA that is attached hereto as Exhibit B. The NDA provides that Mr. Fischer would not disclose Mr. Gusler's Confidential Information except for the purposes of evaluating the commercial potential of Mr. Gusler's designs.

52.     Mr. Fischer breached the NDA by disclosing Mr. Gusler's Confidential Information to third parties for purposes other than Mr. Fischer's evaluation of Mr. Gusler's designs.

53.     Upon information and belief, Mr. Fischer either directly or indirectly disseminated Mr. Gusler's Confidential Information to defendants Listro, Unisar and/or Avita.

54.     Due to the breach by Mr. Fischer, Mr. Gusler suffered damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (Misappropriation of Trade Secrets as to Defendants Fischer and Guerreri)

55.     Plaintiff repeats the allegations in paragraphs 1 through 54 as if fully set forth herein.

56.     Mr. Gusler's design drawings, prototype and concepts were proprietary information used in his business.  The confidential information gave him an advantage over competing inventors because the information was not generally known.

57.     Mr. Gusler disclosed his trade secrets to Mr. Fischer and Mr. Guerreri for the sole purpose of allowing them to evaluate the commercial potential of his designs and concepts.

58.     Mr. Gusler took all reasonable steps to maintain the confidentiality of his trade secrets.

59.     Upon information and belief, Mr. Fischer and Mr. Guerreri misappropriated Mr. Gusler's trade secrets by disclosing the trade secrets to third parties for their own commercial gain and in a manner contrary to the best interests of Mr. Gusler.

60.     Due to the misappropriation by Messrs. Fischer and Guerreri, Mr. Gusler suffered damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### (Unjust Enrichment as to all Defendants)

61.     Plaintiff repeats the allegations in paragraphs 1 through 60 as if fully set forth herein.

62.     Defendants benefited from Mr. Gusler's drawings, designs and concepts at Mr. Gusler's expense.

63.     Equity and good conscience require that defendants compensate Mr. Gusler for his drawings, designs and concepts in an amount to be determined at trial.

WHEREFORE, Mr. Gusler seeks a judgment against defendants awarding him damages in an amount to be determined at trial, his reasonable costs and attorneys fees, and such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

A JURY TRIAL IS DEMANDED ON ALL ISSUES SO TRIABLE

Dated: New York, New York
      October 22, 2007

Stephen M. Chin (SC 8094)
Charles von Simson (CV 1038)
von Simson & Chin LLP
62 William Street, Sixth Floor
New York, New York 10005
Telephone: (212) 514-8645
Facsimile: (212) 514-8648

Attorneys for Plaintiff Timothy Gusler

**EXHIBIT A**

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, United States Code,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Form VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

REGIST    VA 1-421-407

EFFE____ ____ ____ _____

**SEP 18 2007**
Month    Day    Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

---

## 1

**Title of This Work ▼**
NAZELCLEAR DESIGN DRAWINGS II

**NATURE OF THIS WORK ▼** See instructions
Design drawings

**Previous or Alternative Titles ▼**

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

---

## 2

### a

**NAME OF AUTHOR ▼**
Timothy Gusler

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

**Was this contribution to the work a "work made for hire"?**
☐ Yes
☑ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of    United States
{ Domiciled in

**Was This Author's Contribution to the Work**
Anonymous?    ☐ Yes    ☑ No
Pseudonymous?    ☐ Yes    ☑ No

If the answer to either of these questions is "Yes," see detailed instructions

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**Nature of Authorship** Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture    ☐ Map    ☑ Technical drawing
☐ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

### b

**Name of Author ▼**

**Dates of Birth and Death**
Year Born ▼    Year Died ▼

**Was this contribution to the work a "work made for hire"?**
☐ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of
{ Domiciled in

**Was This Author's Contribution to the Work**
Anonymous?    ☐ Yes    ☐ No
Pseudonymous?    ☐ Yes    ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

**Nature of Authorship** Check appropriate box(es). See Instructions
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work

---

## 3

### a
**Year in Which Creation of This Work Was Completed**
2002
This information must be given in all cases.

### b
**Date and Nation of First Publication of This Particular Work**
Complete this information ONLY if this work has been published.
Month June    Day 12    Year 2002
United States    Nation

---

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Timothy Gusler
43 Madison Street
Pequannock, NJ 07440

See instructions before completing this space.

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
SEP 18 2007

ONE DEPOSIT RECEIVED
SEP 18 2007

TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

---

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of 2

| EXAMINED BY  *WES* | FORM VA |
|---|---|
| CHECKED BY | |
| ☐ CORRESPONDENCE<br>☐ Yes | FOR<br>COPYRIGHT<br>OFFICE<br>USE<br>ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**5** **PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼        Year of Registration ▼

**6** **DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
a. Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates. ▼

**a**

See instructions
before completing
this space.

b. Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**b**

**7** **DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼        Account Number ▼

**a**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/Zip ▼
Charles von Simson
von Simson & Chin LLP
62 William Street, Sixth Floor, New York, New York 10005

**b**

Area code and daytime telephone number ▶ (212 )514-8645        Fax number    (212 )514-8648
Email

**8** **CERTIFICATION*** I, the undersigned, hereby certify that I am the
check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of  Timothy Gusler
          Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
Charles von Simson        Date    9/11/2007

Handwritten signature (X) ▼
X _[signature]_

**9**
Certificate
will be
mailed in
window
envelope
to this
address:

Name ▼
Charles von Simson
von Simson & Chin LLP
Number/Street/Apt ▼
62 William Street - Sixth Floor
City/State/ZIP ▼
New York, New York 10005

YOU MUST:
• Complete all necessary spaces
• Sign your application in space 8
SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money
order payable to Register of Copyrights
3. Deposit material
MAIL TO:
Library of Congress
Copyright Office
101 Independence Avenue SE
Washington, DC 20559-6000

*17 USC §506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.



Note - This Design Concept Drawing is Shown to Illustrate A New Design Concept And Are Intended For The Use to R+D in the Construction of A Functional Prototype For The Retail Market.

Screw Top Sealed

Mucus Discharge Jar

Note - Tips Maybe Disposable To Be Determined in R+D.

Surgical Rubber (Nose Tip)

Nose Tips (Various Orifices)

Tapered-To Prevent Excessive Insertion

Medical - Infants Nazelclear

| Portable Battery Powered - Nose Vac | | |
|---|---|---|
| SCALE: N/A | APPROVED BY: | |
| DATE: 2-16-97 | | DRAWN BY: T.G. |
| Design Concept By - 2-26-97 | | REVISED 6/12-07 |
| Timothy D. Gusler | | |
| Discharge Jar / Nose Tips | | DRAWING NUMBER #1A |

Todd Willison
NOTARY PUBLIC
COMMISSION Exp.....



Note:- This Design Concept Drawing Is Shown to Illustrate A New Design Concept And Are Intended For The Use to R+D in the Construction of A Functional Prototype For the Retail Market.

Design Note : Unit Should Incorporate A Light and Music or Pleasant Sounds to Distract Infant While in Use.

Vacuum Discharge

Vacuum Unit Body

Sound

Battery Compartment

* Note - Multible C-D or AA Size Batterys Required For A Powerful Enough Motor. Rechargable May Also Be offered.

Integrated Light Version Updated For Patent Revision

Discharge Jar

Nasal Tip

Opt. Light

Medical - Infants Naze/clear

Portable Battery Powered - Nose VAC

| | | |
|---|---|---|
| SCALE: N/A | APPROVED BY: | |
| DATE: 2-26-97 | | DRAWN BY: T.G. |
| Design Concept By - 2-26-97 Timothy D. Gusler | | REVISED 6/12-02 |
| | | DRAWING NUMBER: |

Vacuum Unit Illustration Revision #1

**EXHIBIT B**

## NON-DISCLOSURE AGREEMENT

This Agreement is made and entered into the _____ day of _____, 20 _____, by and between:

Timothy Gusler    +    _Matt Fisher_
(hereinafter referred to as "Owner") and

_Randolph Rand_
of _____

_____
hereinafter referred to as "Second Party")

### WITNESSETH:

WHEREAS, the Owner had developed and/or owns the right to certain materials, products, processes, inventions, including inventions described in a confidential project for which a patent application has been filed, trade secrets and know-how collectively "Inventions"); and

WHEREAS, Second Party desires to evaluate whether it has an interest in acquiring the Inventions or obtaining a license from the Owner to utilize, improve and otherwise exploit the Inventions in a manner and for purposes approved by the Owner, and it will be necessary for the Owner to communicate certain Confidential Information, as defined herein, to Second Party for such purpose; and

WHEREAS, Owner is willing to communicate to Second Party certain Confidential Information for said purpose, and said purpose only, upon the terms and conditions hereinafter set forth;

NOW, THEREFORE, it is hereby agreed as follows:

1. **Project Description.** Owner wishes to disclose to Second Party, and the Second Party wishes to receive from the Owner, the Confidential Information, as defined below, for the purposes of evaluation to determine applicability of Owner's Inventions. Based upon the foregoing evaluation and analysis, the parties will determine whether it is advisable to enter into additional agreements for the acquisition of the Inventions or the license, use and exploitation of the Inventions. The parties further desire to protect the Confidential Information from unauthorized disclosure and use under the terms and conditions herein.

2. **Definitions.** Where used in this Agreement, "Confidential Information" shall mean any and all tangible and intangible information, whether oral or in writing or in any

1

FIRST OWNER REP.                    SECOND PARTY REP.

_____            _____

other medium, relating to the management, operations, product and Inventions of the Owner, including, without limitations, any and all trade secrets, know-how, designs, formulations, ingredients, samples, processes, machines, processing and control information, product performance data, manuals, supplier lists, customer lists, purchase and sales records, marketing information and computer programs, whether developed by Owner or furnished to Owner by other third parties, and all information which relates to Second Party's analysis of the Confidential Information and the Inventions and the uses thereof.

**3. Limited Transfer of Confidential Information.** Owner shall in his sole discretion, determine what Confidential Information shall be disclosed to the Second Party. To the extent that the Owner elects to disclose Confidential Information to the Second Party, this will be done at a time and in a manner to be decided upon by the Owner, and only in accordance with the terms and limitations set forth herein.

### 4. Return of Confidential Information in Tangible Medium

With regards to Confidential Information in a tangible medium which is provided by the Owner to the Second Party, the Second Party shall return to the Owner any such Confidential Information within seven days of the delivery at the address for notice for the Second Party, of a written request from the Owner sent certified mail return receipt requested.

**5. Limitation on Disclosure and Use.**

Second party understands and agrees that:

(i) neither Second party nor its affiliates will use any Confidential Information for any purpose other than for evaluating Second Party's technical and business interest in obtaining a license or licenses from owner in accordance with the terms set forth in this agreement;

(ii) neither the Second Party nor its affiliates will, without prior written consent of the Owner, disclose, utilize, exploit or distribute the Confidential Information or cause the Confidential Information be exploited or distributed to any third party other than representatives of the Second Party to whom such disclosure is necessary for the purpose of evaluating Second Party's interest in the Inventions and who sign this "NON-DISCLOSURE AGREEMENT" and represent that they personally agree to be bound by the terms of this "NON-

2

FIRST OWNER REP.                      SECOND PARTY REP.

_____               _____

DISCLOSURE AGREEMENT". ANY individual to be exposed to the Confidential Information must sign this "NON-DISCLOSURE AGREEMENT".

**6. Limitations on Reproduction.** Second Party agrees that it will not make or permit to be made, without prior written consent of the Owner, any copies of or other reproductions of the Confidential Information that Owner may supply to Second Party hereunder.

**7. Reservation of Rights.** Nothing in this Agreement shall be construed to prevent the Owner during the term hereof or hereafter from himself using in any manner, or disclosing in any way to third parties any or all of its Confidential Information or from entering into licensing negotiations or agreements with any third party.

**8. Assignability.** This Agreement shall be binding upon and inure to the benefit of the parties, their legal representatives, successors and assigns. Neither this Agreement, nor any rights granted hereunder may be assigned, transferred, conveyed or encumbered by Second Party without the prior written consent of the Owner.

**9. Survival of Provisions.** The provisions contained in Paragraph 5 hereof shall be for a period coterminous with the expiration of any patent, which issues on any patent application now pending or on any continuation or divisional of any patent application now pending, owned by the Owner relating to the Inventions but in no event shall be less than a period of twenty (20) years.

**10. No license Granted.** It is understood and agreed by the parties hereto that nothing in this Agreement is to be construed as a grant of or as an intention or commitment to grant to Second Party any right, title or interest, of any nature whatsoever, in or to the Owner's Confidential Information, the Inventions or any products or process encompassed thereby or any improvements or developments thereon.

**11. Duty to Notify Owner.** Whenever Second party knows or has reason to believe that this Agreement has been violated or that there has been an improper use or disclosure of the Confidential Information or any part thereof, Second Party shall notify Owner in writing, within five (5) days, setting forth in detail such known or suspected violation and/or improper use or disclosure.

**12. Miscellaneous.**

3

FIRST OWNER REP.                    SECOND PARTY REP.

(a) The rights and obligations provided by this Agreement shall take precedence over any specific legends or statements associated with the Confidential Information when received.

(b) Written notices and authorizations under this Agreement, shall be transmitted by certified mail return receipt requested between the parties addressed as follows:

| OWNER | SECOND PARTY |
|---|---|
| Timothy Gusler<br>71 Duncan Avenue<br>Pequannock, N.J.<br>07440 | |

(C) This Agreement contains the entire understanding between the parties, superseding all prior or contemporaneous communications, agreements and understandings between the parties.

(d) This Agreement shall be construed in accordance with the laws of the State of California.

(e) Any modifications or amendments to this Agreement shall only become effective if in writing and signed by a duly authorized representative of each party.

(f) If any provision or clause of this Agreement, or portion thereof, shall be held by any court or other tribunal of competent jurisdiction to be illegal, void, or unenforceable in such jurisdiction, the remainder of such provisions shall not thereby be affected and shall be given full effect without regard to the invalid portion. It is the intention of the parties that, if any court construes any provision or clause of this Agreement, or any portion thereof, to be illegal void or unenforceable because of the duration of such provisions or the area or matter covered thereby, such court shall reduce the duration, area, or matter of such provision and, in its reduced form, such provision shall then be enforceable and shall be enforced.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their authorized representatives.

4

FIRST OWNER REP.

SECOND PARTY REP.

ATTEST:

_____


ATTEST:

_____


OWNER:

By: _____
Title: _____


SECOND PARTY:

By: _____
Title: _____


5


FIRST OWNER REP.

_____


SECOND PARTY REP.

_____