**Exhibit 4**





**©opyright**

United States Copyright Office

# Copyright Registration for Works of the Visual Arts

## General Information

Copyright is a form of protection provided by the laws of the United States to the authors of "original works of authorship," including "pictorial, graphic, and sculptural works." The owner of copyright in a work has the exclusive right to make copies, to prepare derivative works, to sell or distribute copies, and to display the work publicly. Anyone else wishing to use the work in these ways must have the permission of the author or someone who has derived rights through the author.

## Copyright Protection Is Automatic

Under the present copyright law, which became effective January 1, 1978, a work is automatically protected by copyright when it is created. A work is created when it is "fixed" in a copy or phonorecord for the first time. Neither registration in the Copyright Office nor publication is required for copyright protection under the present law.

## Advantages to Copyright Registration

There are, however, certain advantages to registration, including the establishment of a public record of the copyright claim. Copyright registration must generally be made before an infringement suit may be brought. Timely registration may also provide a broader range of remedies in an infringement suit.

## Copyright Notice

Before March 1, 1989, the use of a copyright notice was mandatory on all published works, and any work first published before that date should have carried a notice. For works first published on or after March 1, 1989, use of the copyright notice is optional. For more information about copyright notice, request Circular 3, *Copyright Notice*.

## Publication

The copyright law defines "publication" as the distribution of copies of a work to the public by sale or other transfer of ownership or by rental, lease, or lending. Offering to distribute copies to a group of persons for purposes of further distribution or public display also constitutes publication. A public display does not of itself constitute publication.

A work of art that exists in only one copy, such as a painting or statue, is not regarded as published when the single existing copy is sold or offered for sale in the traditional way, for example, through an art dealer, gallery, or auction house. A statue erected in a public place is not necessarily published.

When the work is reproduced in multiple copies, such as reproductions of a painting or castings of a statue, the work is published when the reproductions are publicly distributed or offered to a group for further distribution or public display.

Publication is an important concept in copyright because, among other reasons, whether a work is published or not may affect the number of copies and the type of material that must be deposited when registering the work. In addition, some works published in the United States become subject to mandatory deposit in the Library of Congress. These requirements are explained elsewhere in this circular.

## Works of the Visual Arts

Copyright protects original "pictorial, graphic, and sculptural works," which include two-dimensional and three-dimensional works of fine, graphic, and applied art. The following is a list of examples of such works:[1]

- Advertisements, commercial prints, labels
- Artificial flowers and plants
- Artwork applied to clothing or to other useful articles
- Bumper stickers, decals, stickers
- Cartographic works, such as maps, globes, relief models
- Cartoons, comic strips
- Collages
- Dolls, toys
- Drawings, paintings, murals
- Enamel works
- Fabric, floor, and wallcovering designs
- Games, puzzles
- Greeting cards, postcards, stationery
- Holograms, computer and laser artwork
- Jewelry designs

- Models
- Mosaics
- Needlework and craft kits
- Original prints, such as engravings, etchings, serigraphs, silk screen prints, woodblock prints
- Patterns for sewing, knitting, crochet, needlework
- Photographs, photomontages
- Posters
- Record jacket artwork or photography
- Relief and intaglio prints
- Reproductions, such as lithographs, collotypes
- Sculpture, such as carvings, ceramics, figurines, maquettes, molds, relief sculptures
- Stained glass designs
- Stencils, cut-outs
- Technical drawings, architectural drawings or plans, blueprints, diagrams, mechanical drawings
- Weaving designs, lace designs, tapestries

Copyright protection for an original work of authorship does not extend to the following:

- Ideas, concepts, discoveries, principles
- Formulas, processes, systems, methods, procedures
- Words and short phrases, such as names, titles, and slogans
- Familiar symbols or designs
- Mere variations of typographic ornamentation, lettering, or coloring

## Useful Articles

A "useful article" is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. Examples are clothing, furniture, machinery, dinnerware, and lighting fixtures. An article that is normally part of a useful article may itself be a useful article, for example, an ornamental wheel cover on a vehicle.

Copyright does not protect the mechanical or utilitarian aspects of such works of craftsmanship. It may, however, protect any pictorial, graphic, or sculptural authorship that can be identified separately from the utilitarian aspects of an object. Thus, a useful article may have both copyrightable and uncopyrightable features. For example, a carving on the back of a chair or a floral relief design on silver flatware could be protected by copyright, but the design of the chair or flatware itself could not.

Some designs of useful articles may qualify for protection under the federal patent law. For further information, contact the Patent and Trademark Office at *Commissioner of Patents & Trademarks, US Patent & Trademark Office, PO Box 1450, Alexandria, VA 22313-1450* or via the Internet at *www.uspto.gov*. The telephone number is (800) 786-9199 and the TTY number is (571) 272-9950. The automated information line is (571) 272-1000.

Copyright in a work that portrays a useful article extends only to the artistic expression of the author of the pictorial, graphic, or sculptural work. It does not extend to the design of the article that is portrayed. For example, a drawing or photograph of an automobile or a dress design may be copyrighted, but that does not give the artist or photographer the exclusive right to make automobiles or dresses of the same design.

## Registration Procedures

If you choose to register a claim in your work, package together the following materials in the same envelope:

1   A properly completed application form

2   A nonreturnable deposit of the work to be registered, and

3   A nonrefundable filing fee* in the form of a check or money order payable to the *Register of Copyrights* with each application

*NOTE: Copyright Office fees are subject to change. For current fees, please check the Copyright Office website at *www.copyright.gov*, write the Copyright Office, or call (202) 707-3000.

Send the items to:

Library of Congress
Copyright Office
101 Independence Avenue SE
Washington, DC 20559-6000

### Application Form

Form VA is the appropriate form for registration of a work of the visual arts. The form should be completed legibly with black ink or type. Do not use pencil or send a carbon copy. All pertinent information should be given on the basic application form.

If you photocopy our forms, be sure that they are legible and printed head-to-head so that when you turn the sheet over, the top of page 2 is directly behind the top of page 1. Do not send two-page photocopies. The application must bear an original signature in ink. A continuation sheet supplied by the Copyright Office should be used only when all necessary information cannot be recorded on the basic form. No other attachments will be accepted. For information on ordering application forms and circulars, see "For Further Information" on page 6 of this circular.

## Deposit Requirements

Circular 40A, *Deposit Requirements for Registration of Claims to Copyright in Visual Arts Material*, provides a basic guide about material that should be sent when registering a claim. Circular 40A also defines basic terms such as "complete copy," "best edition," and "identifying material." The following is a general outline of the deposit requirements:

### Two-Dimensional Works

If unpublished, send one complete copy or identifying material.

If first published in the United States *on or after January 1, 1978*, generally send two complete copies of the best edition.

If first published in the United States *before January 1, 1978*, send two complete copies of the best edition as first published. Where identifying material is permitted or required, the identifying material must represent the work as first published.

If first published outside the United States *before March 1, 1989*, send one complete copy of the work as first published. Where identifying material is permitted or required, the identifying material must represent the work as first published.

If first published outside the United States *after March 1, 1989*, send one complete copy of either the first published edition or the best edition of the work.

### Three-Dimensional Works and Two-Dimensional Works Applied to Three-Dimensional Objects

For published and unpublished works, send identifying material, such as photographs. *Do not* send the three-dimensional work.

### Special Provisions

For some works first published in the United States, only *one copy* is required instead of two. These include:

• Greeting cards, picture postcards, stationery, business cards

• Games

• Pictorial matter or text on a box or container (where the contents of the container are not claimed)

• Contributions to collective works. The deposit may be either one complete copy of the best edition of the entire collective work, the complete section containing the contribution, the contribution cut from the collective work in which it appeared, or a photocopy of the contribution itself as it was published in the collective work.

For some works, identifying material is permitted, not required. For example, either identifying material or actual copies may be deposited for some unpublished works and for limited editions of posters or prints with certain qualifying conditions.

For all works that exceed 96 inches in any dimension, identifying material is required.

For additional information on what is permitted or required for registration of certain kinds of visual arts works, see the *Code of Federal Regulations*, sections 202.19, 20, and 21, which contains the deposit regulations of the Copyright Office (*www.copyright.gov/title37/202/index.html*).

Deposits cannot be returned.

## Registration for Two or More Works with One Application and Fee

Two or more individual works may be registered with one application and fee as follows:

### Unpublished Works

A group of unpublished works may be registered as a collection if *all* the following conditions are met.

• The elements of the collection are assembled in an orderly form.

• The combined elements bear a single title identifying the collection as a whole.

• The copyright claimant or claimants for each element in the collection are the same.

• All the elements are by the same author, or if they are by different authors, at least one author has contributed copyrightable authorship to each element.

**NOTE:** Works registered as an unpublished collection will be listed in the records of the Copyright Office only under the collection title.

### Published Works

All copyrightable elements that are included in a single unit of publication and in which the copyright claimant is the same may be considered a single work for registration

purposes. An example is a game consisting of playing pieces, a game board, and game instructions.

### Group Registration of Published Photographs

A single registration for a group of published photographs can be made if:

• All the photographs were taken by the same photographer, regardless of whether the author is an individual or an employer for hire.

• All the phonographs were first published in the same calendar year.

• All the photographs have the same copyright claimant(s).

### Group Registration of Contributions to Periodicals

A single registration may be made for a group of contributions to periodicals if *all* the following conditions are met.

• All the works have the same copyright claimant.

• All the works are by the same author.

• The author of each work is an individual, not an employer or other person for whom the work was made for hire.

• Each work was first published as a contribution to a periodical (including newspapers) within a 12-month period.

• The application identifies each contribution separately, including the periodical containing it and the date of its first publication.

In addition to the above conditions, if first published before March 1, 1989, a contribution as first published must have borne a separate copyright notice, and the name of the owner of copyright in the work (or an abbreviation or alternative designation of the owner) must have been the same in each notice.

Such contributions are registered on Form VA accompanied by Form GR/CP (group registration of contributions to periodicals). Examples of works eligible for such a group registration include cartoon strips, newspaper columns, horoscopes, photographs, drawings, and illustrations.

### No Blanket Protection

Registration covers only the particular work deposited for the registration. It does not give any sort of "blanket" protection to other works in the same series. For example, registration of a single cartoon or comic strip drawing does not cover any earlier or later drawings. Each copyrightable version or issue must be registered to gain the advantages of registration for the new material it contains. However, under the conditions described above under "Published Works" and "Group Regis-

tration of Contributions to Periodicals," certain group registrations may be made with one application and fee.

## Mandatory Deposit for Works Published in the United States

Although a copyright registration is not required, the 1976 Copyright Act establishes a mandatory deposit requirement for works published in the United States. In general, the owner of copyright or the owner of the exclusive right of publication in the work has a legal obligation to deposit in the Copyright Office within 3 months of publication in the United States *two* complete copies or phonorecords of the best edition. It is the responsibility of the owner of copyright or the owner of the right of first publication in the work to fulfill this mandatory deposit requirement. Failure to make the deposit can result in fines and other penalties but does not affect copyright protection.

Some categories of pictorial, graphic, and sculptural works are exempt from this requirement, and the obligation is reduced for other categories. The following works are *exempt* from the mandatory deposit requirement:

- Scientific and technical drawings and models
- Greeting cards, picture postcards, and stationery
- Three dimensional sculptural works, except for globes, relief models, and similar cartographic works
- Works published only as reproduced in or on jewelry, toys, games, textiles, packaging material, and any useful article
- Advertising material published in connection with articles of merchandise, works of authorship, or services
- Works first published as individual contributions to collective works (but not the collective work as a whole)
- Works first published outside the United States and later published without change in the United States, under certain conditions (*see CFR* 202.19, 20, and 21 at *www.copyright.gov/title37/202/index.html*)

Copies deposited for the Library of Congress under the mandatory deposit provision may also be used to register the claim to copyright but only if they are accompanied by the prescribed application and fee for registration. For further information about mandatory deposit, request Circular 7D, *Mandatory Deposit of Copies or Phonorecords for the Library of Congress.*

## Effective Date of Registration

*A copyright registration is effective on the date the Copyright Office receives all the required elements in acceptable form*, regardless of how long it then takes to process the application and mail the certificate of registration. The time the Copyright Office requires to process an application varies, depending on the amount of material the Office is receiving.

If you apply for copyright registration, you will not receive an acknowledgment that your application has been received (the Office receives more than 600,000 applications annually), but you can expect

- A letter or a telephone call from a Copyright Office staff member if further information is needed or
- A certificate of registration indicating that the work has been registered, or if the application cannot be accepted, a letter explaining why it has been rejected.

If you want to know the date that the Copyright Office receives your material, send it by registered or certified mail and request a return receipt.

## Moral Rights for Visual Artists

For certain one-of-a-kind visual art and numbered limited editions of 200 or fewer copies, authors are accorded rights of attribution and integrity. The right of attribution ensures that artists are correctly identified with the works of art they create and that they are not identified with works created by others. The right of integrity allows artists to protect their works against modifications and destructions that are prejudicial to the artists' honor or reputation. These rights may not be transferred by the author, but they may be waived in a written instrument. Transfer of the physical copy of a work of visual art or of the copyright does not affect the moral rights accorded to the author.

For works of visual art incorporated in a building, special rules apply. If the owner of a building desires to remove such a work from the building and removal is possible without destruction, the owner is required to accord the author the opportunity to make the removal himself. A registry is established within the Copyright Office to record information relevant to this obligation. Both owners of buildings and authors of visual art incorporated in buildings may record statements in the registry. For further information, see Visual Arts Registry, (37 *CFR* 201.25) at *www.copyright.gov/title37/201/37cfr201-25.html*.

## For Further Information

### Information via the Internet

Circulars, announcements, regulations, other related materials, and all copyright application forms are available from the Copyright Office website at *www.copyright.gov*.

### Information by telephone

For general information about copyright, call the Copyright Public Information Office at (202) 707-3000. The TTY number is (202) 707-6737. Staff members are on duty from 8:30 AM to 5:00 PM, eastern time, Monday through Friday, except federal holidays. Recorded information is available 24 hours a day. Or, if you know which application forms and circulars you want, request them 24 hours a day from the Forms and Publications Hotline at (202) 707-9100. Leave a recorded message.

### Information by regular mail

Write to:

Library of Congress
Copyright Office
Publications Section
101 Independence Avenue SE
Washington, DC 20559-6000

### Endnote

1. Copyright protection extends to the design of a building created for the use of human beings. Architectural works created on or after December 1, 1990, or that on December 1, 1990, were either unconstructed or embodied only in unpublished plans or drawings are eligible. For registration of architectural works, use Form VA. Request Circular 41, *Copyright Claims in Architectural Works*, for more information.

**U.S. Copyright Office · Library of Congress · 101 Independence Avenue SE · Washington, DC 20559-6000 · www.copyright.gov**

CIRCULAR 40   REV: 07/2006 · PRINT: 07/2006—xx,000   Printed on recycled paper                    U.S. GOVERNMENT PRINTING OFFICE: 2006-310-···/60,···

2007 U.S. Dist. LEXIS 12776, *

LEXSEE 2007 U.S. DIST. LEXIS 12776



Analysis
As of: Jan 14, 2008

**ZOHAR NIV, individually and as Personal Representative of the Estate of Decedent TZILA NIV and his minor children Decedents GILAD NIV and LIOR NIV, et al., Plaintiffs, - against - HILTON HOTELS CORPORATION and HILTON INTERNATIONAL CO., Defendants.**

**06 Civ. 7839 (PKL)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2007 U.S. Dist. LEXIS 12776*

**February 15, 2007, Decided**
**February 15, 2007, Filed**

**SUBSEQUENT HISTORY:** Application granted by, in part, Application denied by, in part *Niv v. Hilton Hotels Corp., 2007 U.S. Dist. LEXIS 52749 (S.D.N.Y., July 18, 2007)*

**CORE TERMS:** discovery, protective order, conveniens, dispositive, hotel, translation, litigated, presumption of prejudice, unreasonable delay, responding, unfounded, pendency, inefficiencies, burdensome, guests

**COUNSEL:** [*1] For Zohar Niv, individually, Zohar Niv, as Personal Representative of the Estate of Decedent Tzila Niv and his minor children Dencendents Gilad Niv and Lior Niv, Sventlana Akhmedova, individually, Sventlana Akhmedova, as Personal Representative of the Estate of Decedent Anna Akhmedova, Elena Ragulina, individually, Elena Ragulina, as Personal Representative of the Estate of Decedent Nina

Alekseeva, Adlen Robert Galeev, individually, Adlen Robert Galeev, as Personal Representative of the Estates of Decendents Rail Galeev and Svetlana Galeev, Vasilievitch Gorbatch, individually, Vasilievitch Gorbatch, as Personal Representative of the Estate of Decendent Maxime Gorbatch, Irina Myshko, individually, Irina Myshko, as Personal Representative of the Estates of Decendents Lubov Khokhlova and Nikolai Khoklov, Aleksandr Mikhailov, individually, Aleksandr Mikhailov, as Personal Representative of the Estate of Decendent Nadejda Nikolaevna Mikhailova, Sherine Fahmy, individually, Sherine Fahmy, as Personal Representative of the Estate of Decendent Shaheer Kolta, Marina Berezina, Andrej Bezukladnikov, Irina Bezukladnikova, Olga Borisenko, Guennadi Borisenko, Irina Petronva Egorova, Tatiana Fedulova, [*2] Irina Igorevna Ivanova, Tatiana Gorbatch, Alexander Kalinkin,

Alexander Nikolaevich Knyazev, Nadezhda Grigorevnaa Knyazeva, Luibov Jakovleva, Alexander Nikolaevich Litvinov, Irina Alexandrovna Litvinova, Alexander Lovyannikov, Victor Markelov, Idej Markelov, Vitaly Mikhailov, Andrei Morozov, Sergey Vladimirovitch Mikhin, Ekaterina Viktorovna Mukhina, Michail Myshko, Vladimir Mihallovich Perevoshikov, Nadezhda Anatolevna Perevoshikova, Michael Ronin, Sergei Servgeevich Semenuta, Victor Smirnov, Elena Uzkaia, Vitally Lvovich Voronkov, Shimshon Eliapour, Avi Eliapour, Anat Elmishali, Ruth Yiron, Elimelech Varshaviak, Sara Varshaviak, Yeniv Rosin, Miri Cohen, Maxim Lunin, Irena Lunin, individually, Irena Lunin, on behalf of her minor child nikol Lunin, Sivan Yiron, Yael Wetzman, Adi Naveh, individually, Adi Naveh, on behalf of his minor child Boaz Naveh, Yael Naveh, Gaula Ohayon, Lilach Reinisch, Hilla-Anat Gluzman, individually, Hilla-Anat Gluzman, on behalf of her minor child Amit Gluzman, Inbal Matas, Efraim Matas, Idit Matas, Haya Matas, Yossi Dekel, Simha Dekel, Fortuna Ohaion, Leon Ohaion, Charli Chriki, Tal Brudo, Kinneret Franko, Gil Franko, individually, Gil Franko, on behalf **[*3]** of his minor children Bar Franko and Gal Franko, Amira Agbaria, Omar Agbaria, Shlmit Haklai, Uri Haklai, Amer Hamdlla, Osnat Sher, Adar Yiron, Yehudit Ytshaki, Oury Ytshaki, Moshe Tolela, Doris Tolela, Haim Ezer, Itamar Dar, Ravid Dar, individually, Ravid Dar, on behalf of his minor child Nadav Dar, Abraham Genel, Nava Genel, Ziv Genel, Izhak Liba, Isabella Mejia, Inna Shvarts, individually, Inna Shvarts, on behalf of her minor child Shannon Shvarts, Edward Shvarts, Lateefeh Daayfeh, Galit Peretz, Asher Peretz, Lavana Zaynoc, Wolf Zaynoc, Gil Lebovich, Yaron Razon, Anabell Razon, individually, Anabell Razon, on behalf of her minor children Ben Razon and Mai Razon, Shavit Baruch, David David, Alina Solovivo, Claude Mimoun, Avigail Cohen, Eli Cohen, Dalia Eitani, Ofer Eitani, individually, Ofer Eitani, in behalf of his minor children or Eitani, Aloni Eitani, Dana Eitani and Maya Eitani, Shimon Ben-Rahamim, Elena Matveenko, Individually, Elena Matveenko, on behalf of her minor child Inna Matveenko, Samich Abu Moussa, Aminadav Sessler, Osnat Sessler, individually, Osnat Sessler, on behalf of her minor children Lior Sessler and Ophir Sessler, Amira Shahar, Svetlana Matveenko, Gisia Sokol, **[*4]** Amos Sokol, Alergria Deri, Maxim Deri, Ilana Agmon, Jacob Agmon, Yael Niv, Sharon Niv, Danit Waldman, Amos Waldman, individually, Amos Waldman, on behalf of his minor children Omer Waldman and Yarin Waldman, Mordechai Ezer, Sofia Ezer, Mauricio Valdes, Rosa Rojas, Plaintiffs: Robert C. Sentner, Tamar Y. Duvdevani, LEAD ATTORNEYS, Nixon Peabody LLP, New York, NY.

For Hilton Hotels Corporation, Hilton International CO., Defendants: Hilarie Bass, Mark A. Salky, Greenberg Traurig, P.A., Miami, FL; Lori Sue Kahn, Kardaras & Kelleher LLP, New York, NY.

**JUDGES:** Peter K. Leisure, U.S.D.J.

**OPINION BY:** Peter K. Leisure

**OPINION**

### MEMORANDUM ORDER

LEISURE, *District Judge:*

The defendants Hilton Hotels Corporation and Hilton International Co. move this Court for an order pursuant to *Rule 26(c)(4) of the Federal Rules of Civil Procedure* limiting discovery to issues of *forum non conveniens* during the pendency of their motion to dismiss on the grounds of *forum non conveniens.* For the following reasons, the defendants' motion is granted.

### Background

This action arises out of a car bombing on October 7, 2004 at the Hilton Taba Hotel on the

Sinai Peninsula in Egypt. According **[*5]** to the complaint, the plaintiffs, or their decedents, were guests at the hotel. The plaintiffs allege that the defendants failed to provide adequate security to their guests and bring this action for negligence and wrongful death. The defendants have indicated that they intend to move this Court to dismiss the action on the grounds of *forum non conveniens,* and the parties have agreed to a motion schedule.

## Discussion

*Rule 26(c)* provides that, "for good cause shown," a district court may make a protective order limiting discovery to certain matters. *Fed. R. Civ. P. 26(c)*; *see Jones v. Hirschfeld, 219 F.R.D. 71, 74 (S.D.N.Y. 2003)* ("a court has discretion to circumscribe discovery even of relevant evidence"). "'The grant and nature of protection is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion.'" *Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992)*(quoting *Galella v. Onassis, 487 F.2d 986, 997 (2d Cir. 1973)*. Good cause may be shown where a party has filed, or has sought leave to file, a dispositive motion, the stay is for a short period **[*6]** of time, and the opposing party will not be prejudiced by the order. *See Spencer Trask Software & Information Services, LLC v. RPost Intern. Ltd., 206 F.R.D. 367, 368 (S.D.N.Y., 2002)*; *Anti-Monopoly, Inc. v. Hasbro, Inc., No. 94 Civ. 2120, 1996 U.S. Dist. LEXIS 2684, at *6, 1996 WL 101277, at *2 (S.D.N.Y. March 7, 1996)*(collecting cases).

However, while discovery may in a proper case be limited or stayed pending the outcome of a motion to dismiss, the issuance of a protective order is by no means automatic. *See Spencer Trask, 206 F.R.D. at 368* (citing cases). Two related factors a court may consider in deciding a motion for a restriction or stay of discovery are the breadth of discovery sought and the burden of responding to it. *See Anti-Monopoly, Inc., 1996 U.S. Dist. LEXIS 2684, at *6-7, 1996 WL 101277, at *3*. Finally, a court should also consider the strength of the dispositive motion that is the basis of the application. *See, e.g., Gandler v. Nazarov, No. 94 Civ. 2272, 1994 U.S. Dist. LEXIS 17885, at *12, 1994 WL 702004, at *4 (S.D.N.Y. Dec. 14, 1994)*(stay **[*7]** of discovery should be granted where motion to dismiss "is potentially dispositive, and appears to be not unfounded in the law.").

It would be premature for the Court to explore the merits of the defendants' proposed motion. However, the Court does note, based on a discussion with counsel at a pre-motion conference, that at this stage the defendants' motion appears not to be unfounded in the law. Further, if successful, the motion to dismiss would result in the case not being litigated in this forum. The requested protective order would of course remain in effect only during the pendency of the motion.

The discovery sought so far does not appear on its face to be unreasonably broad. However, responding to the discovery requests will likely prove burdensome, and if the motion is granted, this burden will likely have served little purpose. Both the plaintiffs and the defendants anticipate that, if the motion to dismiss is granted, the plaintiffs will bring their case in Egypt or elsewhere in the Middle East. (*See* Sentner Decl. P 17, Jan. 25, 2007; Karadaras Aff. at 6, Feb. 12, 2007.) Discovery in any forum will likely require, *inter alia,* the translation, review, and production **[*8]** of Hebrew and Arabic documents. (Karadaras Aff. at 8-9.) However, the forum in which the case is ultimately litigated will dictate the translation requirements, and likely the translations necessary for litigation in this forum will differ from those needed in the Middle East. Furthermore, if the litigation occurs in a forum in the Middle East, counsel litigating the case will need to review the same documents that New York counsel had already reviewed (*id.* at 9), and presumably with different considerations. Thus, if the motion is

granted and the action litigated in a forum in the Middle East, full merits discovery in this forum is likely to result in avoidable inefficiencies and pointlessly duplicative efforts. Such inefficiencies are unnecessarily burdensome.

The plaintiffs have not sought to identify any prejudice they might suffer as a result of the protective order the defendants seek. Rather, they ask the Court to expand the presumption of prejudice caused by a plaintiff's unreasonable delay in prosecuting a case, *see, e.g., Shannon v. General Electric Co., 186 F.3d 186, 195 (2d Cir. 1999)*, to include the delay caused by a court order. The Court declines **[*9]** to do so. To presume that an order made pursuant to *Rule 26(c)* would result in prejudice to the non-moving party would be to significantly restrict the effectiveness of *Rule 26(c)*. Further, the presumption of prejudice applies when a plaintiff's failure to prosecute its case results in "'unreasonable delay,'" *id.* (quoting *Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 43 (2d Cir. 1982))*, and the Court is not inclined to view delay intentionally caused by its order as unreasonable.

### Conclusion

For the reasons set forth herein, defendants' motion is granted: discovery is limited to issues relating only to *forum non conveniens.*

### SO ORDERED.

### New York, New York

February 15, 2007

Peter K. Leisure

U.S.D.J.

2007 U.S. Dist. LEXIS 63502, *; 84 U.S.P.Q.2D (BNA) 1766

2 of 17 DOCUMENTS

**Richard K. Niemi, et al., Plaintiffs, v. NHK Spring Co., Ltd., et al., Defendants.**

**3:06CV1117**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, WESTERN DIVISION**

*2007 U.S. Dist. LEXIS 63502*; *84 U.S.P.Q.2D (BNA) 1766*

**August 27, 2007, Decided**

**CORE TERMS:** drawing, machine, stabilizer, copyrighted, copyright laws, summary judgment, manufacturing, architectural, manufacture, derivative, sculptural, pictorial, accrued, graphic, infringement, partial, producing, copying, built, Copyright Act, act of infringement, copyright infringement, phonorecords, embodied, new process, licensing agreement, statute of limitations, infringed, forming

**COUNSEL:** **[*1]** For Richard K. Niemi, dba, Richard K. Niemi Design and Engineering Services RKN Technology, L.L.C., Plaintiffs: Donald E. Schlyer, Schlyer & Associates, Merrillville, IN; John C. Dougherty, Dougherty & Kyle, Detroit, MI; Robin H. Kyle, Dougherty & Kyle, Detroit, MI.

For New Mather Metals, Incorporated, a subsidiary of NHK Spring Company, LTD, Defendant: Adam B. Strauss, Dykema Gossett - Bloomfield Hills, Bloomfield Hills, MI; Patrick F. Hickey, Dykema Gossett, Detroit, MI; Paul A. Wilhelm, LEAD ATTORNEY, Dykema Gossett - Detroit, Detroit, MI.

**JUDGES:** James G. Carr, Chief Judge.

**OPINION BY:** James G. Carr

**OPINION**

ORDER

This is a copyright case revolving around technical drawings of a machine. Plaintiffs Richard K. Niemi and RKN Technology, LLC assert that NHK Spring Co., Ltd. ("NHK") through its subsidiary, New Mather Metals, Inc. ("New Mather"), violated plaintiffs' copyright and a related license agreement between the parties. Defendants move for partial summary judgment on plaintiffs' claim for damages.

**Background**

New Mather is a manufacturing company producing automobile stabilizer bars. For several years, plaintiffs had performed design work for New Mather.

Prior to November, 1990, Niemi created a drawing of what **[*2]** he claims was a new process and machine for developing, designing and manufacturing stabilizer bars. At about this time, Niemi met with Denzil Sheckler, an engineer for New Mather, and discussed his new design for producing stabilizer bars.

After meeting with Sheckler, Niemi filled New Mather's purchase orders for drawings and

Case 1:07-cv-09535-RWS   Document 28-5   Filed 01/14/2008   Page 13 of 34

Page 2
2007 U.S. Dist. LEXIS 63502, *; 84 U.S.P.Q.2D (BNA) 1766

designs incorporating the allegedly new process. Niemi claims that he and New Mather entered into a licensing agreement for use of the drawings.

Plaintiffs allege that New Mather improperly and impermissibly copied, made derivatives of, and shared their drawings with third parties. Those third parties, which included other stabilizer bar suppliers, allegedly built machines derived from plaintiffs' drawings.

Plaintiffs registered the drawings in 2005 with the United States Copyright Office. They contend that defendants' copyright violations have occurred continuously since approximately March 9, 1998.

Plaintiffs assert that the alleged copying of the drawings, sharing the drawings with third parties, and construction of machines and stabilizer bars based on the drawings violate federal copyright laws and the alleged licensing agreement between the parties.

**Discussion**

Defendants **[*3]** have submitted a limited summary judgment motion focusing exclusively on damages-related issues. They argue that: 1) under the statute of limitations for violations of federal copyright law, plaintiffs are limited to damages incurred on or after February 24, 2003, and 2) plaintiffs' **copyrights** are not **infringed** by the use of **technical drawings** to manufacture stabilizer bar forming or similar machines, nor are the copyrights infringed by the production of stabilizer bars by those machines. Thus, defendants assert, plaintiffs should not be entitled to damages for those alleged violations.

**1. Statute of Limitations**

Under the Copyright Act, "[n]o civil action shall be maintained unless it is commenced within three years after the claim accrued." *17 U.S.C. § 507(b).* A cause of action accrues "when a plaintiff knows of the infringement or

is chargeable with such knowledge." *Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d 615, 621 (6th Cir. 2004).* Also, "[b]ecause each act of infringement is a distinct harm, the statute of limitations bars infringement claims that accrued more than three years before suit was filed, but does not preclude infringement claims that accrued within the **[*4]** statutory period." *Id.*

Plaintiffs filed this action on February 24, 2006. Defendants therefore argue that plaintiffs may not seek damages for any claim that accrued prior to February 24, 2003.

Plaintiffs did not respond to defendants' arguments regarding the statute of limitations. As a result, summary judgment will be granted in favor of defendants to the extent that plaintiffs seek damages for claims accruing prior to February 24, 2003. [1]

> 1   Neither party has singled out "each act of infringement," and I am therefore unable to rule, at the present time, on whether specific acts gave rise to claims, and whether those claims are time-barred. Those rulings shall be made later, if at all, on motion of the parties.

**2. Damages for Manufacture of Stabilizer Bar Forming Machines and Stabilizer Bars**

Defendants argue that copyright law only protects against copying of the drawings, and it is not against the law to make machines from someone else's copyrighted technical drawings. Furthermore, defendants argue that the copyright laws permit producing stabilizer bars with machines built from plaintiff's drawings.

Plaintiffs claim that creating machines based on plaintiffs' drawings manufacturing stabilizer **[*5]** bars on such machines violate plaintiffs' copyright and thus give rise to claims for damages directly under the copyright laws. [2]

> 2   Plaintiffs also argue that, even if making machines from plaintiffs'

Case 1:07-cv-09535-RWS    Document 28-5    Filed 01/14/2008    Page 14 of 34

Page 3

2007 U.S. Dist. LEXIS 63502, *; 84 U.S.P.Q.2D (BNA) 1766

drawings is not itself a copyright violation, a claim for damages can be based on the underlying copyright violation [i.e., copying the drawings], which enabled the machines to be built in accordance with those drawings.

Defendants acknowledge that this argument is beyond the scope of their original summary judgment motion. Thus, this opinion deals only with whether building and using machines based on plaintiffs' drawings violate copyright laws. Whether such actions derivatively give rise to a claim for damages is not addressed or resolved in this opinion.

Copyright protection extends to various types of works, including "pictorial, graphic, and sculptural works" and "architectural works." *17 U.S.C. § 102(a)*. Copyright protection, however, does not extend "to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." *17 U.S.C. § 102(b)*.

In the case of non-artistic **[*6]** works, the holder of a copyright exclusively possesses rights: "1) to reproduce the copyrighted work in copies or phonorecords; 2) to prepare derivative works based upon the copyrighted work; [and] 3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." *17 U.S.C. § 106*.

Plaintiffs cite various cases for the proposition that, in the case of copyrighted drawings, the construction of an object depicted in the drawings or copies of the drawings can constitute a violation of the Copyright Act. *See Robert R. Jones Associates, Inc., v. Nino Homes, 858 F.2d 274 (6th Cir. 1988)*; *Nucor Corp. v. Tennessee Forging Steel Services, Inc., 476 F.2d 386 (8th Cir. 1973)*; *Demetriades v. Kaufmann, 680 F. Supp. 658*

*(S.D.N.Y. 1989)*; *The Herman Frankel Organization v. Tegman, 367 F. Supp. 1051 (1973)*. Those cases, however, all involve "architectural works." Under *17 U.S.C. § 101* an "architectural work" is "the design of a *building* as embodied in any tangible medium of expression, including a building, architectural plans, or drawings") (emphasis added). *See Niemi v. American Axle Manufacturing & Holding, Inc., 2006 U.S. Dist. LEXIS 50153, 2006 WL 2077590, at *3-4 (E.D. Mich.)*. **[*7]** Thus, the cases cited by plaintiff are distinguishable.

The technical drawings in this case fall into the category of "pictorial, graphic, and sculptural works." *17 U.S.C. § 101*. With this category of works, the construction of a machine that uses a process derived from a copyrighted technical drawing does not constitute a violation of the copyright. *17 U.S.C. § 101* (stating that "the design of a useful article . . . shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article"); *see also Niemi v. American Axle, supra, 2006 U.S. Dist. LEXIS 50153, 2006 WL 2077590 at *3*.

The "specific issue before the court" in *Niemi v. American Axle* was "whether the use of copies, or derivatives of copies, of copyrighted **technical drawings** to manufacture a machine is an act of **copyright infringement**." *2006 U.S. Dist. LEXIS 50153, [WL] at *2*. The court held that "the manufacture of a machine from a copyrighted **technical drawing** is clearly not **copyright infringement**." *2006 U.S. Dist. LEXIS 50153, [WL] at *3*. The court decided not to "expand the scope of copyright **[*8]** protection to include the act of manufacturing an article using a copy or derivative copy of the copyrighted drawing." *Id.*

I concur with the logic and the outcome of

2007 U.S. Dist. LEXIS 63502, *; 84 U.S.P.Q.2D (BNA) 1766

the court in *Niemi v. American Axle.* Partial summary judgment will therefore be granted in favor of the defendants.

**Conclusion**

For the foregoing reasons, it is hereby

ORDERED THAT the defendants' motion for partial summary judgment be, and the same is hereby granted.

So ordered.

s/James G. Carr

Chief Judge

08/27/07

2006 U.S. Dist. LEXIS 50153, *

LEXSEE 2006 U.S. DIST. LEXIS 50153



Positive
As of: Jan 14, 2008

**RICHARD K. NIEMI, and MARK NIEMI, d/b/a RICHARD K. NIEMI DESIGN AND TECHNOLOGY, LLC, Limited Liability Company, Plaintiffs, v. AMERICAN AXLE MANUFACTURING & HOLDING INC., a Delaware corporation and successor corporation to AMERICAN AXLE & MANUFACTURING OF MICHIGAN, a defunct corporation, and AMERICAN AXLE MANUFACTURING INC., a Delaware corporation, and SPRINGFIELD TOOL & DIE, INC., a South Carolina defunct corporation, JAMES ONYSKI, an individual, GEORGE HILLS, an individual, and TOM ALDRIDGE, an individual, jointly and severally, Defendants.**

**Case No. 05-74210**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**

*2006 U.S. Dist. LEXIS 50153*

**July 24, 2006, Argued**
**July 24, 2006, Filed**

**SUBSEQUENT HISTORY:** Summary judgment denied by *Niemi v. Am. Axle Mfg. & Holding, Inc., 2006 U.S. Dist. LEXIS 82156 ( E.D. Mich., Oct. 31, 2006)*

**PRIOR HISTORY:** *Niemi v. Am. Axle Mfg. & Holding, 2006 U.S. Dist. LEXIS 8647 ( E.D. Mich., Feb. 13, 2006)*

**CORE TERMS:** drawing, manufacture, machine, copyrighted, architectural, copyright infringement, derivative, summary judgment, stabilizer, Copyright Act, partial, depicted, patent, nonmoving party, manufacturing, built, benders, welders, moving party, infringing, discovery, construct, embodied, cabinets, copied, protective order, genuine issue, material fact, unauthorized copies, infringement

**COUNSEL:** [*1] For Richard K. Niemi, Mark Niemi, Doing business as Richard K. Niemi Design and Engineering Services, RKN Technology, L. L. C., Plaintiffs: Donald Schlyer, Schlyer Assoc., Merrillville, IN; John C. Dougherty, Robin H. Kyle, Dougherty & Kyle, Detroit, MI.

For American Axle Manufacturing and Holding, Incorporated, successor corporation to American Axle and Manufacturing of Michigan, American Axle and Manufacturing, Incorporated, Defendants, Counter Claimants: George D. Moustakas, David A. McClaughry,

Michael P. Doerr, Harness, Dickey, (Troy), Troy, MI.

For James Onyski, Defendant: David A. McClaughry, George D. Moustakas, Harness, Dickey, (Troy), Troy, MI.

For Springfield Tool and Die, Incorporated, successor corporation to Newco of Duncan, Inc., George Hills, Tom Aldridge, Defendants: Christian J. Garascia, Young & Basile (Troy), Troy, MI.

**JUDGES:** PRESENT: THE HONORABLE PATRICK J. DUGGAN, U.S. DISTRICT COURT JUDGE.

**OPINION BY:** PATRICK J. DUGGAN

**OPINION**

**OPINION AND ORDER**

**GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**AS TO COUNT I OF PLAINTIFFS' COMPLAINT**

At a session of said Court, held in the U.S. District Courthouse, Eastern District of Michigan, on July 24, 2006.

**[*2]**  PRESENT: THE HONORABLE PATRICK J. DUGGAN, U.S. DISTRICT COURT JUDGE

On November 2, 2005, Plaintiffs filed a copyright infringement action against Defendants. Presently before the Court is American Axle Manufacturing & Holding, Inc., American Axle & Manufacturing of Michigan, American Axle Manufacturing Inc., and James Onyski's Motion under *FED. R. CIV. P. 56* for Partial Summary Judgment as to Count I of Plaintiff's Complaint, filed on March 28, 2006. Defendant Springfield Tool & Die Inc. joined the Motion for Partial Summary Judgment as to Count I. The Court heard oral arguments on

this Motion on May 16, 2006 and on June 22, 2006. For the reasons set forth below, Defendants' Motion shall be granted.

1    On January 30, 2006, Plaintiffs stipulated to the dismissal of Defendant Thomas Aldridge, and on March 8, 2006, Plaintiffs stipulated to the dismissal of Defendant George Hill. On July 18, 2006, the Court entered an Order dismissing Count II of Plaintiffs' Complaint, Conspiracy to Commit Copyright Infringement. Therefore, the only remaining claim in this case is Count I, Copyright Infringement, against the American Axle Defendants, Springfield, and James Onyski.

**[*3] I. Factual Background**

Plaintiff Richard Niemi contends that he created a number of drawings for stabilizer benders, welders, and other special machinery used to manufacture parts for cars and trucks from 1996 to 2000. (Compl. P11). On September 29, 2005, the U.S. Copyright Office issued Niemi a copyright registration for the drawings. (*Id.*; *see also* Defs.' Mot. for Summ. J. Ex. C). Niemi had previously granted a license to Plaintiff RKN Technologies with a right to sub-license others. (Compl. P11) Plaintiff RKN Technologies had provided the drawings to Defendants "for the sole purpose of making a single machine to produce stabilizer bars for the GMT 360 and a single machine to produce stabilizer bars for the GMT 800." (*Id.*)

Specifically, Plaintiffs contend that the parties reached an agreement where Plaintiffs would provide Defendants with the technical drawings so that one machine could be built and tested. Then, when Defendants felt confident that the Plaintiffs' machine, as depicted in the drawings, would work, Defendants would file a patent on behalf of Plaintiffs, pay a reasonable royalty to Plaintiffs, and engage Plaintiffs to design any and all additional **[*4]** machines. (Pls.' Br. in Opp. to

Defs.' Mot. for Summ. J. at 4-5).

Plaintiffs contend that, despite this agreement, Defendants infringed on their copyrights in the drawings "by using the Drawings to manufacture stabilizer benders and welders without Plaintiffs' permission" and "by creating further drawings and machines to manufacture stabilizer bars from the Drawings by making derivative drawings and utilizing them to manufacture stabilizer benders and welders for different stabilizer bars for various automobiles." (Compl. at PP13, 15). According to Plaintiffs, the technical drawings submitted by Plaintiffs were copied and modified by Defendants to manufacture numerous machines. (Pls.' Br. in Opp. to Defs.' Mot. Summ. J. at 6). [2]

2   Plaintiffs contend that testimony and documents proving these infringements were provided in a prior action against Defendants commenced in September 2003, by Plaintiffs in Wayne County Circuit Court, Case No. 03-332390-CK. In the state court action, Plaintiffs asserted claims of misappropriation of trade secrets and breach of contract. Before the parties conducted discovery, Judge Gershwin A. Drain entered a Protective Order at the request of the parties, ordering that "any information or d o c u m e n t   d e s i g n a t e d   a s 'CONFIDENTIAL' shall be used solely in connection with his action and shall not be disclosed to anyone . . . ." On April 5, 2006, Plaintiffs filed a motion in this Court seeking the entry of a protective order that allows for the use of the discovery produced in the state court litigation in the present copyright infringement action. On April 21, 2006, Defendants filed a response in opposition to Plaintiffs' motion for a protective order. This matter was referred to Magistrate Judge Wallace Capel on May 1, 2006 for a report and recommendation.

**[*5] II. Standard of Review**

Defendants move for partial summary judgment on Count I of Plaintiff's Complaint (Copyright Infringement). This Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *FED. R. CIV. P. 56(c)*. No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)*. The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986)*.

Once the moving party has met its burden, *Rule 56(e)* requires the nonmoving party to look **[*6]** beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. *FED. R. CIV. P. 56(e)*; *Celotex, 477 U.S. at 322-24, 106 S. Ct. at 2552-53*. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson, 477 U.S. at 252, 106 S. Ct. at 2512*, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)*. Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993)*.

**III. Applicable Law and Analysis**

The specific issue before the Court is whether the use of copies, or derivatives of

copies, of copyrighted technical drawings to manufacture a machine is an act of copyright infringement. (*See* Defs.' Resp. to Pls.' Suppl. Br. Ex. N, 6/22/06 Hrg. Tr. at 17). In their Motion for Partial Summary Judgment, Defendants argue **[*7]** that, even assuming that Plaintiffs' allegations are true that Defendants did manufacture machines based on Plaintiffs' technical drawings, the manufacture of such machines is not an actionable copyright infringement. Plaintiffs, however, contend that fabricating a machine depicted in a drawing is copyright infringement where the fabrication is achieved through the unlawful copying or making unlawful derivatives of copyrighted drawings.

Plaintiffs' technical drawings are original pictorial or graphic works protected by *17 U.S.C. § 102(a)(5)*. Pursuant to *17 U.S.C. § 106*, Plaintiffs, the copyright owners have the exclusive right to "reproduce," "prepare derivative works," "distribute copies," and "display" the copyrighted work. However, "use" rights are governed by the Patent Act, *35 U.S.C. § 271*. *See, e.g.*, *Nimmer § 2.18[A]* ("Where the owner of a patent obtains the right to exclude others from using the invention, the rights granted to a copyright owner under *Section 106* of the Copyright Act do not include the right to prevent others from using the copyrighted work.") (quotation omitted).

**[*8]** Moreover, *17 U.S.C. § 102(b)* provides: "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such a work." *17 U.S.C. § 113(b)* further limits such copyright protection and provides "this title does not afford, to the owner of copyright in a work that portrays a useful article as such, any greater or lesser rights with respect to the making, distribution, or display of the useful article so portrayed than those afforded to such works under the law." The Congressional

record preceding the adoption of the Copyright Act sets forth the following examples of the limitation expressed by *17 U.S.C. § 113(b)*:

Under distinctions indicated in existing court decisions, that the copyright in a work portraying a useful article as such would not protect against manufacture of that article, ***copyright protection would not extend*** to the following cases:

- A copyrighted drawing of a chair, used to manufacture **[*9]** chairs of that design;

- A copyrighted scale model of an automobile, used to m a n u f a c t u r e automobiles of that design;

- ***A copyrighted technical drawing s h o w i n g t h e construction of a machine used to manufacture the machine;***

- A copyrighted picture of a dress, used to manufacture the dress.

(Defs.' Mot. Ex. B, House Comm. on the Judiciary, 87th Cong., Report of the Register of Copyrights on the General Revision of the U.S. Copyright Law (1961) (emphasis added)).

Thus, the manufacture of a machine from a copyrighted technical drawing is clearly not copyright infringement. Defendants contend

that this remains true whether or not "copies" or "derivatives of copies" of the technical drawings were referenced, citing *National Medical Care, Inc. v. Espiritu, 284 F. Supp. 2d 424 (S.D. W. Va. 2003)*.

In *National Medical Care, Inc.*, the court found that copyrights in technical drawings depicting medicine cabinets do not protect against the production of the medicine cabinets. *Id. at 435-36*. In that case, the defendant stipulated that he had made unauthorized copies of the plaintiffs' technical drawings. *Id. at 433*. **[*10]** The plaintiff sought an order requiring the defendant to remove cabinets which had been built from the copied technical drawings. *Id.* The court found that, under *17 U.S.C. § 102(b)*, the ideas illustrated in the technical drawings were not protected. *Id. at 433*. The court held that copyright protection does not extend to structures built from technical drawings "regardless of whether those structures have been built with reference to infringing copies . . . ." *Id. at 435-36*.

Like the plaintiffs in *National Medical Care, Inc.*, Plaintiffs in this case attempt to expand the scope of copyright protection to include the act of manufacturing an article using a copy or derivative copy of the copyrighted drawing. However, Plaintiffs are unable to cite to any case law in support of such protection.

In their supplemental brief, Plaintiffs discuss a number of cases involving architectural drawings. *See Nucor Corp. v. Tennessee Forging Steel Serv., Inc., 476 F.2d 386 (8th Cir. 1973); Herman Frankel Org. v. Tegman, 367 F. Supp. 1051 (E.D. Mich. 1973); Robert R. Jones Assoc., Inc. v. Nino Homes, 858 F.2d 274 (6th Cir. 1988)*. **[*11]** However, architectural works are protected by separate section of the Copyright Act. A 1990 amendment to the Copyright Act defines architectural works as "design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings." *17 U.S.C. § 101.* ₅

Therefore, these cases are not on point.

3  Plaintiffs argue that prior to the 1990 amendment, the use of unlawful copies and derivative technical drawings to construct a building was copyright infringement. Plaintiffs are incorrect. *See Demetriades v. Kaufmann, 680 F. Supp. 658, 666 (S.D.N.Y 1988)*. In *Demetriades*, which was decided prior to the 1990 amendment to the Copyright Act, the court rejected the argument that construction of a house from copied architectural plans constituted copyright infringement. *Id.* The court reasoned:

> Whether or not the construction originally "flowed from" infringing copies of [plaintiff's] architectural plans is immaterial. Construction of a building imitating that depicted in copyrighted architectural plans does not, consistent with *Baker*, constitute infringement of those plans. Although individuals are not free to make unauthorized copies of copyrighted architectural plans, they remain free to duplicate houses depicted in those plans unless and until the designs embodied in such plans are secured by patent.

*Id.*

**[*12]**  For example, although the Sixth Circuit found, in *Robert R. Jones Assoc., Inc. v. Nino Homes, 858 F.2d 274 (6th Cir. 1998)*, that "one may construct a house which is identical to a house depicted in copyrighted architectural plans, but one may not directly copy those plans and then use the infringing copy to

2006 U.S. Dist. LEXIS 50153, *

construct the house," *id. at 280*, this holding is limited to architectural works. *See Winfield Collection, Ltd. v. Gemmy Indus., Corp., 147 Fed. Appx. 547, 551 (6th Cir. Aug. 25, 2005)* (distinguishing the architectural plans and construction on the house in *Robert R. Jones Assocs.*, from design plans for a "crashing witch" ornament because the architectural plans involved "useful" objects ⁴ "or functional creations whose protection sounds more appropriately in patent than in copyright").

4    The *Robert R. Jones* case was decided before the 1990 amendment to the Copyright Act which gave special protection to architectural works.

Therefore, Plaintiffs **[*13]** have failed to cite a single case holding that the use of copies, or derivatives of copies, of copyrighted technical drawings to manufacture a machine constitutes an act of copyright infringement.

Accordingly,

**IT IS ORDERED** that Defendants' Motion under *FED. R. CIV. P. 56* for Partial Summary Judgment as to Count I of Plaintiff's Complaint is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' copyrights are not infringed by the use, use of copies, or use of derivatives of copies, of technical drawings to manufacture or use stabilizer benders, welders, or other machines as alleged in Plaintiffs' Complaint.

s/ PATRICK J. DUGGAN

UNITED STATES DISTRICT JUDGE

1997 U.S. Dist. LEXIS 5738, *; 42 U.S.P.Q.2D (BNA) 1727

FOCUS - 2 of 3 DOCUMENTS



Positive
As of: Jan 14, 2008

## LARRY HACKNEY v. LEHRER McGOVERN BOVIS OF PENNSYLVANIA, et al.

### CIVIL ACTION NO. 97-1015

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### *1997 U.S. Dist. LEXIS 5738; 42 U.S.P.Q.2D (BNA) 1727*

### April 25, 1997, Decided
### April 25, 1997, FILED; April 28, 1997, ENTERED

**SUBSEQUENT HISTORY:** Affirmed without opinion by *Hackney v. **Lehrer** McGovern Bovis, 1997 U.S. App. LEXIS 33435 (3d Cir. Pa., Oct. 28, 1997)*
Related proceeding at *Wizkids Creations Co. v. SEPTA Transp., 2003 U.S. Dist. LEXIS 3200 (E.D. Pa., Feb. 27, 2003)*

**PRIOR HISTORY:** *Hackney v. Sands Hotel & Casino, 1992 U.S. Dist. LEXIS 6581 (E.D. Pa., Apr. 28, 1992)*

**DISPOSITION:** [*1] Defendants' motions to dismiss the complaint for failure to state a claim upon which relief may be granted are GRANTED. The complaint is DISMISSED WITH PREJUDICE as to all defendants. Defendants' motions to hold the plaintiff in contempt of court are DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff copyright owner filed a sixth action against defendant hotels for copyright infringement of his copyright for an elevated conveyor belt system. The hotels filed motions to dismiss the copyright owner's complaint for failure to state a claim under *Fed. R. Civ. P. 12(b)(6)* and motions for contempt of court.

**OVERVIEW:** The copyright owner obtained a copyright for a scale model of an elevated conveyor belt system. Two hotels completed work on an elevated walkway, which contained horizontal escalators connecting their casinos to a boardwalk. The court granted the hotels' motions to dismiss and denied their motions for contempt of court. The court held that: (1) although the hotels duplicated the copyright owner's idea of creating an elevated conveyor belt system, the copyright owner was provided no protection; (2) copyright did not protect the owner's ideas or designs because the elevation of the system was necessary to the proper functioning of the people-mover and was not capable of existing independently of the

1997 U.S. Dist. LEXIS 5738, *; 42 U.S.P.Q.2D (BNA) 1727

utilitarian aspects; (3) a scale model utilizing a rubber band as a conveyor belt was not "substantially similar" to the hotels' people-mover; (4) the copyright owner's claims lacked merit and were dismissed; and (5) although the copyright owner was not in contempt of court for violation of a trial judge's previous order, the copyright owner was not entitled to file any further copyright infringement actions against any defendant without prior authorization of the court.

**OUTCOME:** The court granted the hotels' motion to dismiss for failure to state a claim and dismissed with prejudice the copyright owner's complaint. The court denied the hotels' motions to hold the copyright owner in contempt of court but enjoined the copyright owner from filing any further copyright infringement actions without prior authorization.

**CORE TERMS:** frivolous, casino, people-mover, hotel, similarity, infringement, copyright infringement, contempt, conveyor belt, elevated, copied, copyright laws, substantially similar, docketed, certify, boardwalk, facts supporting, copyrightable, certification, authorization, copyrighted, punished, assigned, walkway, rubber band, failure to state a claim, denied sub nom, cause of action, new claims, direct evidence

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Dismissals > Involuntary Dismissals > Failures to State Claims*
[HN1] *Fed. R Civ. P. 12(b)(6)* permits dismissal of a complaint for failure to state a claim upon which relief may be granted. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. In considering a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party.

*Copyright Law > Civil Infringement Actions > Burdens of Proof*
*Copyright Law > Civil Infringement Actions > Elements > Copying by Defendants*
*Copyright Law > Civil Infringement Actions > Elements > Substantial Similarity > Ordinary Observer Test*
[HN2] Copyright infringement is established if the plaintiff proves that it owned the copyrighted material and that the copyrighted material was copied by the defendant. In order to prove the defendant has copied the work in question, plaintiff must show a "substantial similarity between the works." The criterion for substantial similarity is whether an ordinary lay observer would detect a substantial similarity between the works.

*Copyright Law > Subject Matter > Ideas > General Overview*
*Copyright Law > Subject Matter > Statutory Copyright & Fixation > Original Works of Authorship*
[HN3] The copyright laws protect the expression of ideas, not the ideas themselves. Copyright is available only for the expression of a work of authorship, not for a mere idea.

*Copyright Law > Subject Matter > Ideas > General Overview*
*Copyright Law > Subject Matter > Statutory Copyright & Fixation > Original Works of Authorship*
[HN4] A design may, under some circumstances, be an expression protectable under the copyright laws.

Case 1:07-cv-09535-RWS    Document 28-5    Filed 01/14/2008    Page 24 of 34

Page 3

1997 U.S. Dist. LEXIS 5738, *; 42 U.S.P.Q.2D (BNA) 1727

*Copyright Law > Subject Matter > Pictorial, Graphic & Sculptural Works > General Overview*

[HN5] While *17 U.S.C.S. § 102(a)(5)* allows a copyright to be issued for a pictorial, graphic or sculptural work, copyright protection extends only to the extent that such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

*Copyright Law > Civil Infringement Actions > Elements > Substantial Similarity > General Overview*
*Copyright Law > Subject Matter > Ideas > General Overview*

[HN6] A copyright is not infringed by an expression of the idea which is substantially similar where such similarity is necessary because the idea or system being described is the same.

*Copyright Law > Civil Infringement Actions > Elements > Substantial Similarity > General Overview*

[HN7] Substantial similarity is judged by determining whether a lay person would believe there has been an unlawful appropriation.

*Copyright Law > Civil Infringement Actions > Defenses > Statutes of Limitations & Laches*
*Governments > Legislation > Statutes of Limitations > Time Limitations*

[HN8] A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge.

**COUNSEL:** LARRY HACKNEY, PLAINTIFF, Pro se, PHILADELPHIA, PA.

For **LEHRER** MCGOVERN BOVIS OF PENNA., **LEHRER** MCGOVERN BOVIS GROUP, INC., DEFENDANT: AARON R. KRAUSS, PEPPER, HAMILTON & SCHEETZ, PHILA, PA USA. For GREATE BAY & CASINO, INC., DEFENDANT: FREDERICK H. KRAUS, ATLANTIC CITY, NJ USA.

**JUDGES:** William H. Yohn, Jr., Judge

**OPINION BY:** William H. Yohn, Jr.

**OPINION**

**MEMORANDUM AND ORDER**

Yohn, J.

April 25, 1997

Pro se Plaintiff, Larry Hackney, has filed his sixth lawsuit in the Eastern District of Pennsylvania, alleging infringement of his copyrighted work, the " at Flying Carpet." As was the case with his previous filings, it is clear that Hackney's allegations are meritless. The court will therefore grant the defendants' motion to dismiss the complaint.

**BACKGROUND**

Although not entirely clear from Hackney's pleadings, the " at Flying Carpet," which received an official copyright in 1975, is apparently a scale model of an elevated **[*2]** conveyor belt system. The model is 13 inches high and 20 inches long and is suspended in the air by ten inch poles. It seems that by turning a hand operated crank, objects can be carried along the length of the unit by a rubber band conveyer belt. The conveyor belt is encased, so as to create a "tube" through which the conveyor belt runs.

Hackney claims that he discussed the " at Flying Carpet" with one Emmanuel Goldsmith at an American Society of Invention banquet in 1978. Goldsmith purportedly told Hackney that

Atlantic City was looking for a way to move people from the casinos to the boardwalk without stopping traffic, and that the " at Flying Carpet" might just provide such a mechanism. Hackney agreed to split any profits with Goldsmith if Goldsmith would present the idea to officials in Atlantic City.

In 1988 the Sands Hotel and Casino and the Claridge Casino and Hotel in Atlantic City completed work on an elevated "people-mover" which connected their casinos to the boardwalk. The people-mover is essentially an elevated walkway which contains a horizontal escalator running from one end to the other. Hackney claims that the construction of this people-mover is "substantially **[*3]** similar" to his " at Flying Carpet" and therefore infringes his copyright.

## DISCUSSION

[HN1] *Federal Rule of Civil Procedure 12(b)(6)* permits dismissal of a complaint for failure to state a claim upon which relief may be granted. *See Fed. R. Civ. P. 12(b)(6).* "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984).* Thus, in considering a motion to dismiss, "all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party." *Sturm v. Clark, 835 F.2d 1009, 1011 (3rd Cir. 1987).*

[HN2] "Copyright infringement is established if the plaintiff proves that it owned the copyrighted material and that the copyrighted material was copied by the defendant." *Ford Motor Co. v. Summit Motor Prod., Inc., 930 F.2d 277, 290 (3d Cir.), cert. denied sub nom. Altran Corp. v. Ford Motor Co., 502 U.S. 939, 116 L. Ed. 2d 324, 112 S. Ct. 373 (1991).* In order to prove the defendant has copied the work in question, plaintiff must show a "substantial similarity between **[*4]** the works." *See Universal Athletic Sales Co. v. Salkeld, 511 F.2d 904, 907 (3d Cir.), cert. denied sub nom. Universal Athletic Sales Co. v. Pinchock, 423 U.S. 863, 46 L. Ed. 2d 92, 96 S. Ct. 122 (1975).* "The criterion for [substantial similarity] is whether an ordinary lay observer would detect a substantial similarity between the works." *Id.*

[HN3] The copyright laws protect the expression of ideas, not the ideas themselves. See *511 F.2d at 906*; *Andrien v. Southern Ocean County Chamber of Commerce, 927 F.2d 132, 134 (3d Cir. 1991)* ("Copyright is available only for the expression of a work of authorship, not for a mere idea."). Accepting all the allegations in Hackney's complaint as true, the most that could be said is that the defendants duplicated his *idea* of creating an elevated conveyor belt system to move people from one location to another without interfering with street level traffic. The copyright laws thus provide the plaintiff no protection. As our court of appeals has stated:

> Underlying [plaintiff's] claim of infringement was a feeling of resentment that the defendants had utilized knowledge which had been secured without their own independent research. In short, it was the protection **[*5]** of the idea that was the foremost consideration of the plaintiff. *But, copyright does not protect ideas-- only expressions.*

*Universal Athletic, 511 F.2d at 908* (emphasis added).

Hackney appears to argue in his brief, however, that the defendants have copied the *design* of his " at Flying Carpet." [HN4] A design may, under some circumstances, be an expression protectable under the copyright laws. *See Masquerade Novelty, Inc. v. Unique*

Case 1:07-cv-09535-RWS    Document 28-5    Filed 01/14/2008    Page 26 of 34

Page 5

1997 U.S. Dist. LEXIS 5738, *; 42 U.S.P.Q.2D (BNA) 1727

*Indus., Inc., 912 F.2d 663, 669-70 (3d Cir. 1990).* But even if Hackney's complaint could be construed as alleging that the defendants stole his "design" rather than his "idea," the copyright laws provide him no protection in this case.

First, even if the defendants had copied certain aspects of the plaintiff's design, those aspects are not copyrightable. [HN5] While *17 U.S.C. § 102(a)(5)* allows a copyright to be issued for a pictorial, graphic or sculptural work, *see 17 U.S.C. § 102(a)(5)*, copyright protection extends "only to the extent that . . . such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." **[*6]** *Masquerade Novelty, 912 F.2d at 670 (3d Cir. 1990)* (quoting H.R. Rep. No. 94-1476, at 55 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5668). Even if there is a similarity between the design of the " at Flying Carpet" and the defendants' people-mover, such a similarity would be permissible if necessary to the effective use of the people-mover. *See Universal Athletic, 511 F.2d at 908* [HN6] ("[A] copyright is not infringed by an expression of the idea which is substantially similar where such similarity is necessary because the idea or system being described is the same."). The only aspect of the " at Flying Carpet's" "design" that Hackney claims has been improperly copied by the defendants is the fact that the people-mover is elevated. Even if the idea of elevating the people-mover could be deemed "expressive," the elevation of the system is necessary to the proper functioning of the people-mover and is not "capable of existing independently of the utilitarian aspects of the article." *Masquerade Novelty, 912 F.2d at 670.* Hackney's design is, therefore, not copyrightable.

Further, even if the court could somehow find that the defendant's " at Flying Carpet" is copyrightable, **[*7]** a scale model utilizing a rubber band as a conveyor belt simply cannot

be deemed "substantially similar" to the full sized, functioning people-mover operating in Atlantic City. *See Ford Motor Co., 930 F.2d at 291* (holding that [HN7] substantial similarity is judged by determining whether a lay person would believe there has been an unlawful appropriation).

Based on the foregoing, the court has no difficulty in agreeing with the other judges of this court who have encountered these claims-- the claims lack merit and are properly dismissed. ¹

> 1   The court suspects that the plaintiff's claims are also barred by the three year statute of limitations. *See 17 U.S.C. § 507(b)*; *Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994)* [HN8] ("A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge.").

In dismissing the fifth of Hackney's succession of complaints, then Chief Judge Bechtle also entered the following order:

> Plaintiff **[*8]**  may not file any copyright infringement actions against any party relating to the "People-mover" without leave of this court. In seeking leave of court, plaintiff must certify that the claims he wishes to present are new claims, never before raised and disposed of on the merits by any federal court. Upon a failure to certify or upon a false certification, plaintiff may be found in contempt of court and punished accordingly.

*Hackney v. Sands Casino, 1992 U.S. Dist. LEXIS 6581*, Civ. No. 92-421, 1992 WL 97335 (E.D. Pa. Apr. 28, 1992).

The order was entered in response to Hackney's repeated filings of claims based on

Case 1:07-cv-09535-RWS    Document 28-5    Filed 01/14/2008    Page 27 of 34

Page 6
1997 U.S. Dist. LEXIS 5738, *; 42 U.S.P.Q.2D (BNA) 1727

his " at Flying Carpet" design which had, in each case, been determined by the court to be frivolous. [2] The history of Hackney's filings are detailed in Judge Bechtle's opinion which is attached as an appendix to this memorandum and order.

> 2    The court of appeals has also upheld every dismissal which has been appealed.

Perhaps Hackney misinterpreted Judge Bechtle's order by concluding that he was entitled to bring [*9] the same claims against different defendants. I do not so read the order, but will give Hackney the benefit of the doubt and decline to hold him in contempt of court for violation of Judge Bechtle's order. Nevertheless, I will now make it clear to Hackney that he is not to file *any* copyright infringement actions against *any* defendant for *any* claims for copyright infringement of his " at Flying Carpet" without prior authorization of the court. Further, the defendant is to attach a copy of this memorandum and order to any complaint he files, a copy of the memorandum and order filed by Judge Bechtle in Civil Action No. 92-421, a copy of the complaint filed in this matter, and a copy of the complaint filed in Civil Action No. 92-421. Finally, the court advises Hackney that it will not hesitate to impose appropriate sanctions against him should he violate the terms of this order and be found in contempt of court.

### ORDER

AND NOW, this 25th day of April, 1997, after consideration of the defendants' motions pursuant to *Federal Rule of Civil Procedure 12(b)(6)* and defendants' motions to hold the plaintiff in contempt of court, the defendants' memoranda in support thereof, [*10] and the plaintiff's response thereto, **IT IS HEREBY ORDERED** that:

1. Defendants' motions to dismiss the complaint for failure to state a claim upon which relief may be granted are GRANTED. The complaint is DISMISSED WITH PREJUDICE as to all defendants.

2. Defendants' motions to hold the plaintiff in contempt of court are DENIED.

**IT IS FURTHER ORDERED** that plaintiff is ENJOINED from filing any complaint against any person, corporation or other entity for any claims alleging copyright infringement of the " at Flying Carpet" without first seeking authorization of the court in which the plaintiff seeks to file. In seeking such authorization, the defendant shall abide by the order of this court in *Hackney v. Sands Hotel & Casino, 1992 U.S. Dist. LEXIS 6581*, Civ. No. 92-421, 1992 WL 97335 (E.D. Pa. Apr. 28, 1992). In addition to the certification required by that order, the defendant shall attach to any such complaint a copy of this order and accompanying memorandum, a copy of the memorandum and order of this court in Civil Action No. 92-421 dated April 28, 1992, a copy of the complaint filed in this case, and a copy of the complaint filed in Civil Action No. 92-421. If plaintiff fails to abide by [*11] the terms of this order and the order of this court dated April 28, 1992 in Civil Action No. 92-421, he may be found in contempt of court and punished accordingly.

William H. Yohn, Jr., Judge

Appendix

Larry HACKNEY v. SANDS HOTEL & CASINO and Claridge Casino Hotel.

Civ. A. No. 92-0421.

United States District Court, E.D. Pennsylvania.

Larry Hackney, pro se.

Frederick H. Kraus, Atlantic City, N.J., for Sands Hotel & Casino.

Nicholas Poduslenko, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for Claridge Casino Hotel.

MEMORANDUM ORDER

BECHTLE, Chief Judge.

Case 1:07-cv-09535-RWS    Document 28-5    Filed 01/14/2008    Page 28 of 34

Page 7

1997 U.S. Dist. LEXIS 5738, *; 42 U.S.P.Q.2D (BNA) 1727

AND NOW, TO WIT, this 28th day of April, 1992, upon consideration of defendants' motions to dismiss the complaint, IT IS ORDERED that the motions are granted. IT IS FURTHER ORDERED that plaintiff may not file any copyright infringement actions against any party relating to the "People Mover" without leave of this court. In seeking leave of court, plaintiff must certify that the claims he wishes to present are new claims, never before raised and disposed of on the merits by any federal court. Upon a failure to certify or upon a false certification, plaintiff may be found in contempt of court and punished accordingly. **[*12]** Plaintiff must also submit under oath a statement setting forth each and every fact he would present at trial supporting his claim of infringement. Plaintiff's motions to expedite in full response and to formally charge defendants Mr. Bradley H. Stone and Gloria Soto are dismissed.

DISCUSSION

Presently before the court is the fifth in a series of complaints filed against the Sands Hotel & Casino ("Sands") and Claridge at Park Place, Inc., d/b/a Claridge Casino Hotel ("Claridge"), wherein plaintiff, acting pro se, purports claims of copyright infringement against defendants relating to the "People Mover," which is an enclosed horizontal escalator that transports passengers from the boardwalk in Atlantic City, New Jersey, to the Sands, a hotel and casino located one block from the boardwalk. A history of plaintiff's related legal endeavors is in order. [FN1]

Plaintiff first brought suit against six defendants, including the Sands and Claridge, in this court on November 16, 1988. This suit, containing three related complaints, was docketed as Civil Action No. 88-5205 and was assigned to the Honorable Thomas N. O'Neill, Jr. Judge O'Neill immediately dismissed the complaints as frivolous **[*13]** on the ground that plaintiff had not made a short and plain statement of the facts supporting infringement

as required by *Federal Rule of Civil Procedure 8*. Judge O'Neill also noted that plaintiff's complaints were devoid of any facts supporting the claims and, consequently, permitted plaintiff 30 days to amend to remedy the complaints' inadequacies. Plaintiff filed an amended complaint which Judge O'Neill dismissed by Order dated January 5, 1989, wherein he stated, after citing relevant case law, that "plaintiff's complaint contains no facts to support direct evidence of copying. Moreover, plaintiff has alleged no facts to show that a substantial similarity exists between plaintiff's and defendant's works." Plaintiff appealed the dismissal to the United States Court of Appeals for the Third Circuit. The Third Circuit dismissed the appeal as frivolous pursuant to *28 U.S.C. 1915(d)*.

Plaintiff filed a second complaint which was docketed as Civil Action No. 89-7434 and also assigned to Judge O'Neill. In dismissing the second action as frivolous, Judge O'Neill noted that plaintiff was complaining of the same acts of infringement as were alleged in the first action. Judge O'Neill also **[*14]** stated that:

Plaintiff's complaint is inadequate. Plaintiff has failed to make a short and plain statement of the facts supporting infringement. The complaint contains no facts to support direct evidence of copying . . . Neither does the complaint allege facts to show that a substantial similarity exists between plaintiff's and defendants' works. While defendants' walkways are outwardly similar in appearance to plaintiff's work, that fact alone is insufficient to establish that the walkways are substantially similar to plaintiffs' work.

Hackney v. Sands Hotel and Casino, No. 89-7434 (E.D.Pa. October 19, 1989) (Order dismissing action as frivolous). Plaintiff appealed the dismissal of the second action and again the Third Circuit dismissed the appeal as frivolous.

Plaintiff filed a third complaint on March

30, 1990, which was docketed at Civil Action No. 90-1712, wherein he again alleges the same acts of infringement as in the prior two actions. Judge O'Neill dismissed this complaint as frivolous [FN2] and the Third Circuit dismissed the appeal as frivolous and denied plaintiff's petition for rehearing.

Undaunted, plaintiff once again filed suit. The fourth action, docketed at **[\*15]** Civil Action No. 91-1126, was assigned to the Honorable Herbert J. Hutton. Judge Hutton noted that the fourth complaint was virtually identical to Civil Action No. 89-7434 and dismissed it as frivolous. The Third Circuit affirmed the dismissal by Judgment Order dated September 20, 1991. After being rejected in his claims for the fourth time, plaintiff sought leave to amend his complaint in the second action, which Judge O'Neill denied since that action was no longer pending.

On February 20, 1992, plaintiff filed the fifth complaint against the Sands and Claridge. This complaint is essentially the same as its predecessors and is clearly frivolous. The court adopts the reasoning of Judge O'Neill and Judge Hutton and will dismiss the complaint pursuant to *28 U.S.C. § 1915(d)*.

This matter cannot end here, however, Courts have the responsibility to ensure that their limited resources are allocated in a way the promotes the interests of justice. See In *Re McDonald, 489 U.S. 180, 109 S. Ct. 993 (1989)*. While courts must endeavor to be as flexible as possible when administering claims brought by pro se litigants, there comes a time when repeatedly frivolous litigants abuse the system to **[\*16]** the extent that institutional concerns must overcome the policy which provides that litigant with continuous access to the courts. This is such a case.

The All Writs Act, *28 U.S.C. § 1651(a)*, empowers district courts to issue injunctions restricting the filing of meritless pleadings by litigants where the pleadings raise issues identical or similar to those that have already been adjudicated. In *Re Packer Ave. Associates, 884 F.2d 745 (3rd Cir.1989)*. Altough this type of relief is an extreme remedy and should be used sparingly, the court is of the view that such action is warranted in the present case.

Plaintiff has filed a total of seven complaints against various defendants based on the same allegedly wrongful conduct. On each occasion a district court and an appellate court determined that plaintiff's complaint was frivolous. Plaintiff may believe that these causes of action are meritorious, but it is clear that courts do not; the repeated bringing of lawsuits will not change that fact. The court is satisfied that unless plaintiff is somehow restrained from bringing further suits, he is likely to continue to abuse the judicial process and harass other parties. See *Safir v. United* **[\*17]** *States Lines, Inc., 792 F.2d 19 (3d Cir.1986)*. The terms of the injunction set forth above was adopted by the Third Circuit in Packer Ave. Associates, wherein it remarked that this method "strikes a good balance between the right of the litigant to access to the courts, the right of parties to previous litigation to enjoy the repose of res judicata, and the right of taxpayers not to have a frivolous litigant become an unwarranted drain on their resources." *884 F.2d at 748*.

FN1. The court is adopting the facts set forth in the various complaints discussed below by reference.

FN2. Judge O'Neill noted that in addition to the previous two actions, plaintiff also filed claims against U.S. News and World Report (Civil Action No. 89-9228) and C.B.S., Inc. and Paramount, Inc. (Civil Action No. 89-8894).

END OF DOCUMENT

1997 U.S. Dist. LEXIS 5738, *; 42 U.S.P.Q.2D (BNA) 1727

177 Fed. Appx. 121, *; 2006 U.S. App. LEXIS 13877, **;
79 U.S.P.Q.2D (BNA) 1958; Copy. L. Rep. (CCH) P29,249

LEXSEE 177 FED. APPX. 121



Positive
As of: Jan 14, 2008

**DAN BROWN AND RANDOM HOUSE, INC., Plaintiffs-Counter-Defendants-Appellees, IMAGINE FILMS ENTERTAINMENT, LLC, SONY PICTURES RELEASING CORPORATION, SONY PICTURES ENTERTAINMENT, INC., and COLUMBIA PICTURES INDUSTRIES, INC., Counter-Defendants-Appellees, v. LEWIS PERDUE, Defendant-Counterclaimant-Appellant,**

**No. 05-4840-cv**

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

*177 Fed. Appx. 121*; *2006 U.S. App. LEXIS 13877*; *79 U.S.P.Q.2D (BNA) 1958*; *Copy. L. Rep. (CCH) P29,249*; *34 Media L. Rep. 1609*

**April 18, 2006, Decided**
**April 18, 2006, Filed**

**NOTICE:** **[**1]** RULES OF THE SECOND CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Magistrate's recommendation at *Brown v. Perdue, 2006 U.S. Dist. LEXIS 85167 (S.D.N.Y., Aug. 30, 2006)*
US Supreme Court certiorari denied by *Perdue v. Brown, 2006 U.S. LEXIS 8569 (U.S., Nov. 13, 2006)*

**PRIOR HISTORY:** Appeal from the United States District Court for the Southern District of New York (Daniels, J.).
*Brown v. Perdue, 2005 U.S. Dist. LEXIS 15995 (S.D.N.Y., Aug. 4, 2005)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** After defendant author publicly alleged that plaintiff writer had, without permission, appropriated content from his two novels in creating a novel, plaintiffs, the writer and others, filed suit against the author, seeking a declaratory judgment that they had not engaged in copyright infringement. The author filed a counterclaim. The United States District Court for the Southern District of New York ruled for plaintiffs. The author appealed.

**OVERVIEW:** The parties did not dispute that the author obtained valid copyrights for his books. For purposes of the summary judgment

motion, under *Fed. R. Civ. P. 56(c)*, plaintiffs conceded that they had access to the author's books. This case therefore turned on whether, in the eyes of the average lay observer, the writer's novel was substantially similar to the protectible expression in the author's books. A copyright did not protect an idea, but only the expression of an idea. As to the copyrightable material in the author's books, the district court concluded, on the basis of a comparison of the similarities in such aspects as the total concept and feel, theme, characters, plot, sequence, pace, and setting of the two sets of books, that no reasonable trier of fact could have found the works substantially similar. On that basis, the district court granted summary judgment in favor of plaintiffs. The instant court affirmed the district court's decision for substantially the reasons given by the district court.

**OUTCOME:** The judgment of the district court was affirmed.

**CORE TERMS:** copyright infringement, summary judgment, similarity, copyright law, law claims, novel, de novo, constituent elements, internal quotation marks omitted, substantially similar, unjust enrichment, copyrightable, declaratory, protectible, abandoned, preempted, copying, movie

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Appellate Review > Standards of Review*
[HN1] An appellate court reviews de novo a district court's grant of summary judgment in favor of appellees.

*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN2] Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. A court must decide if the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Copyright Law > Civil Infringement Actions > Elements > General Overview*
*Copyright Law > Civil Infringement Actions > Elements > Copying by Defendants*
[HN3] To establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. In the absence of direct evidence, copying may be established by showing (a) that the defendant had access to the copyrighted work and (b) the substantial similarity of protectible material in the two works.

*Copyright Law > Subject Matter > Ideas > General Overview*
[HN4] A principle fundamental to copyright law is that a copyright does not protect an idea, but only the expression of an idea.

*Civil Procedure > Appeals > Reviewability > Preservation for Review*
[HN5] Issues not raised on appeal are deemed abandoned.

**COUNSEL:** For Plaintiffs-Counter-Defendants-Appellees and Counter-Defendants-Appellees: ELIZABETH A. MCNAMARA of Davis Wright Tremaine LLP (Linda Steinman and James Rosenfeld of Davis Wright Tremaine LLP, and Charles B. Ortner of Proskauer Rose LLP, on the brief), New York, N.Y.

For Defendant-Counterclaimant-Appellant: DONALD N. DAVID of Cozen O'Connor, PC, New York, N.Y.

177 Fed. Appx. 121, *; 2006 U.S. App. LEXIS 13877, **;
79 U.S.P.Q.2D (BNA) 1958; Copy. L. Rep. (CCH) P29,249

**JUDGES:** PRESENT: HON. RALPH K. WINTER, HON. GUIDO CALABRESI, HON. ROSEMARY S. POOLER, Circuit Judges.

**OPINION**

[*122] **SUMMARY ORDER**

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court be and it hereby is **AFFIRMED.**

This appeal involves a copyright infringement action between Appellant Lewis Perdue (hereinafter "Appellant" or "Perdue"), author of two novels, *The Da Vinci Legacy* (1983) and *Daughter of God* (2000), and Appellees Dan Brown, Random House, Inc., and several associated [**2] entertainment companies (collectively "Appellees"), who respectively wrote, published, and made into a movie, the best-selling fiction novel *The Da Vinci Code* (2003). ¹ After Appellant publicly alleged that Appellee Brown had, without permission, appropriated content from his two novels in creating *The Da Vinci Code,* Appellees filed suit against Perdue in federal court, seeking a declaratory judgment that they had not engaged in copyright infringement. Appellant promptly counterclaimed against Brown, his publisher, and the movie studios, seeking injunctive relief and $ 150 million in damages. In response to motions for judgment on the pleadings and summary judgment, the District Court for [*123] the Southern District of New York (Daniels, *J.*) ruled in Appellees' favor, granting declaratory relief to Appellees and dismissing all of Appellant's claims. We assume the parties' familiarity with the facts, procedural history, and scope of issues on appeal, which we reference only as necessary to explain our decision. ²

1 On appeal to us, Appellant claims that *The Da Vinci Code* "plagiarized primarily" from *Daughter of God,* and,

"to a lesser extent," from *The Da Vinci Legacy.* Appellant's brief does not, however, develop his allegation of copyright infringement on the basis of *The Da Vinci Legacy,* and both parties treat this claim as essentially abandoned. We therefore only consider Appellant's copyright infringement claim on the basis of *Daughter of God.*

[**3]
2 For a thorough summary of *Daughter of God* and *The Da Vinci Code* (which are the principal subjects of this litigation), *see Brown v. Perdue, 2005 U.S. Dist. LEXIS 15995, 2005 WL 1863673, No. 04 Civ. 7417 (GBD) (S.D.N.Y. Aug. 4, 2005).*

[HN1] We review *de novo* the district court's grant of summary judgment in favor of Appellees. *Arica Inst., Inc. v. Palmer, 970 F.2d 1067, 1071 (2d Cir. 1992).* [HN2] Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c).* A court must decide if "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).*

[HN3] To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'n, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991).* [**4] In the case before us, the parties do not dispute that Appellant obtained valid copyrights for his books. Appellant therefore needs only to demonstrate that Appellees copied original, constituent elements of his books. In the absence of direct evidence, copying may be established by showing "(a) that the defendant had access to

177 Fed. Appx. 121, *; 2006 U.S. App. LEXIS 13877, **;
79 U.S.P.Q.2D (BNA) 1958; Copy. L. Rep. (CCH) P29,249

the copyrighted work and (b) the substantial similarity of protectible material in the two works." *Kregos v. Associated Press, 3 F.3d 656, 662 (2d Cir. 1993)*; *see also Laureyssens v. Idea Group, Inc., 964 F.2d 131, 139 (2d Cir. 1992)* (stating that a plaintiff must prove both "access and substantial similarity between the works" (internal quotation marks omitted)). For purposes of the summary judgment motion, Appellees have conceded that they had access to Perdue's books. This case therefore turns on the second part of the test: "whether, in the eyes of the average lay observer, [*The Da Vinci Code* is] substantially similar to the protectible expression in *[Daughter of God].*" *Williams v. Crichton, 84 F.3d 581, 587 (2d Cir. 1996)*.

In the case before us, the district court first distinguished between **[**5]** noncopyrightable and copyrightable work, following [HN4] "a principle fundamental to copyright law," that "a copyright does not protect an idea, but only the expression of an idea." *Kregos, 3 F.3d at 663* (internal citation omitted); *see also Warner Bros. Inc. v. Am. Broad. Cos., 720 F.2d 231, 239-40 (2d Cir. 1983)* (holding that "[t]he similarity to be assessed must concern the expression of ideas, not the ideas themselves"). As to the copyrightable material in Appellant's books, the court concluded, on the basis of a comparison of "the similarities in such aspects as the total concept and feel, theme, characters, plot, sequence, pace, and setting of the [two

sets of books]," that "no reasonable trier of fact could find the works substantially similar." *Williams, 84 F.3d at 587-88* (internal quotation marks omitted). On that basis, the court granted summary judgment in favor of Appellees. Having considered the matter *de novo*, we now affirm the decision below for substantially the reasons given by the district court. ₃

> 3    The district court also decided that Appellant's unjust enrichment claims were preempted by federal copyright law, and therefore dismissed those state law claims. Appellant did not appeal that decision to us. As a result, the question of whether all state law claims of unjust enrichment are preempted by federal copyright law is not before us. *See Perez v. Hoblock, 368 F.3d 166, 171 (2d Cir. 2004)* [HN5] (issues not raised on appeal are deemed abandoned); *see generally* Arthur R. Miller, *Common Law Protection for Products of the Mind: An "Idea" Whose Time Has Come, 119 Harv. L. Rev. 703 (2006)* (discussing the scope of federal preemption of state law claims under the 1976 Copyright Act).

**[**6]**   **[*124]**   We have considered all of Appellant's arguments and find them to be without merit. The judgment of the district court is hereby AFFIRMED.